In the Matter of the Transfer Tax upon the Estate of MICHAEL PATERNO, Deceased.

MARIA G. PATERNO and Others, Executors, etc., of MICHAEL PATERNO, Deceased, Appellants; EUGENE M. TRAVIS, Comptroller of the State of New York, Respondent.

First Department, March 22, 1918.

Tax — transfer tax — value of stock of construction company — appraisal of value of real estate — decree fixing tax reversed and report remitted for correction — appeal — notice.

Notice of appeal construed and criticized.

Appeal from an order of the Surrogate's Court fixing a transfer tax upon the property of a decedent. The tax involved the appraisal of certain shares of the capital stock of a corporation which had formerly engaged in the contracting business, but which has discontinued the same, its assets consisting principally of New York real estate. The value of the decedent's interest in the corporation in part depended upon the value of a note of the corporation held by his estate. Evidence examined, and *held*, that the determination of the surrogate was contrary to the weight of evidence and that the decree should be reversed and the appraiser's report remitted to him for correction.

Where it is necessary to appraise the property of a decedent in a corporation owning real estate the real estate should be appraised at its market value at the time of the decedent's death, taking into consideration the question as to whether there is an available market for such property under the existing conditions.

A price which may be realized at a forced sale of lands is not a fair indication of their market value.

APPEAL by Maria G. Paterno and others, as executors, from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 22d day of November, 1917, and "from so much of said order and decree as dismissed the appeal of said executors to the surrogate of New York county, from the order and decree entered herein on or about the 22d day of August, 1917, fixing the transfer tax upon the property of said decedent."

*Walter F. Peacock,* for the appellants.

*Schuyler C. Carlton* of counsel [*Lafayette B. Gleason,* attorney], for the respondent.

SHEARN, J.:

The decree appealed from recites an appraisement of the property of the decedent and a determination of the transfer tax and adjudges that the estate's appeal " is hereby sustained as to the valuation of the stock of Paterno & Son Contracting Company, and that the order affixing the tax herein be and the same is hereby reversed, and that the appraiser's report be and is hereby remitted to him for the purpose of correcting the value of the seventeen (17) shares of stock held by decedent in Paterno & Son Contracting Company," and further adjudges " that the appeal in all other respects be and the same is hereby dismissed." The first point concerns what is before this court on the appeal, the question arising because of the lack of care and precision with which the notice of appeal was drawn. The appeal recites that it is taken from " the order and decree made herein by Hon. John P. Cohalan, Surrogate, and entered in the office of the clerk of said Court on or about the 22d day of November, 1917, from so much of said order and decree as dismissed the appeal of said executors to the Surrogate of New York County, from the order and decree entered herein on or about the 22d day of August, 1917, fixing the transfer tax upon the property of said decedent." We think that a fair construction of this notice of appeal requires us to hold that the appellants intended to and did in effect appeal from the entire order and decree. The importance of a proper

construction of the notice of appeal lies in the fact that the controversy turns upon the value of a note of the contracting company for $70,457.38 held by the estate. The estate claims that the note is not worth more than $50,000. Obviously, if the surrogate was right in holding that the capital stock of the corporation was worth $13.80 a share (as his opinion shows he did), this is tantamount to holding that the assets are at least equal to the liabilities and there would be no warrant for holding the note to be worth less than its face value. Therefore, it would be a useless proceeding to send the report back to the appraiser for the purpose of having the valuation of this note corrected, if this valuation of the stock is to stand. It is accordingly necessary to consider the appeal upon the merits.

The decedent was president of the contracting company, a corporation with a capital stock of $5,000 divided into fifty shares, of which he owned seventeen shares. This corporation had been engaged in erecting buildings in the city of New York and at the time of decedent's death it had practically discontinued its business as a contracting company and its assets consisted principally of real estate situated in New York city. According to the books of the company, the value of its assets on January 1, 1917, was $451,394.03, while its liabilities were $450,703.85. The surrogate said: " The executors have filed affidavits of real estate appraisers showing that the value of the assets at the date of decedent's death was only $442,500. The difference between this valuation and the book value is so small as to be almost negligible, and the book value, therefore, should be accepted in estimating the value of the stock." In this the learned surrogate appears to have misapprehended the evidence. Where it is necessary to appraise the property of a decedent in a corporation owning real estate, the real estate should be appraised at its market value at the time of the decedent's death. The difference between the book value of real estate and market value, especially at such a time as this, is apt to be very considerable. The experts called by the estate showed that the *worth* of the property was stated in the books at what was in their opinion approximately the correct figure but they showed, and the surrogate makes no reference to this and gives no

force or effect to it, that there was at decedent's death no market for such property, had been none for such property for quite some time, and that if the property were actually sold it would not bring, according to Archibald, more than $365,500. This would give an equity of $25,000, to which should be added a certain $22,500 second mortgage. In other words, there would be total assets of $47,500 with which to pay debts of $110,203.85. This estimate is the one most favorable to the Comptroller. The affidavit of Goodale shows that, on the basis of market value, there was no equity in the property. Taking, however, the estimate of Archibald, the note would certainly be worth much less than the $50,000 on which valuation the estate was willing to pay the tax. These estimates of the experts are criticised by the Comptroller because they are based upon a forced sale, and it is correctly contended that, as a rule, a forced sale price is not a fair indication of market value. Where there is no market at all, it is obviously impossible to give an accurate statement of market value; but the tax has to be fixed and under such circumstances the nearest possible approximation to market value should be made. The nearest reasonable approximation is to have an expert state the price which the property will bring after fair and reasonable efforts have been made to find a purchaser, which of course includes a reasonable time being taken for this purpose as counter distinguished from a hurried or forced sale within a fixed and stated number of days. This, I think, was the fair purport of the opinions rendered by these experts and they strike me as entirely reasonable, considering the notoriously depressed state of the real estate market.

This is not a case, as assumed by the appellants, within *Matter of Gibert* (176 App. Div. 850) where the appraiser has arbitrarily disregarded all the evidence and there was nothing before him or before the surrogate on which to base a different conclusion, for here were the book entries which afforded some guide, taken in connection with the opinions of the appellants' experts. But the determination that this note was worth its face value and that the stock of this corporation had any value was contrary to the weight of the evidence

and the decree should be reversed and the appraiser's report remitted to him for the purpose of correcting the value of the seventeen shares of stock held by the decedent in the contracting company and correcting the value of the note in question.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Decree reversed, with costs to the appellants, and proceeding remitted to surrogate for further action in accordance with opinion of this court.