In the Matter of the Transfer Tax upon the Estate of LENA McMULLEN, Deceased.

BANKERS' TRUST COMPANY OF THE CITY OF NEW YORK, as Executor, etc., Appellant; STATE TAX COMMISSION, Respondent.

First Department, January 13, 1922.

Taxation — transfer tax — shares of stock in foreign corporation engaged in dredging owned by non-resident not subject to transfer tax though corporation owns real property here — Tax Law, § 220, as amended by Laws of 1919, chapter 626, construed and applied — statute intended to reach stock of real estate corporations only — surrogate did not have jurisdiction to entertain proceeding.

A transfer tax is not assessable under section 220 of the Tax Law, as amended by chapter 626 of the Laws of 1919, on shares of stock of a foreign corporation engaged in the business of dredging, owned by a non-resident testator at the time of her death and which are physically present in this State, though said corporation owned some real property within this State.

Said statute which provides in effect for a transfer tax on " property evidenced by or consisting of shares of stock of a foreign corporation " owned by a non-resident where " the property represented by such shares of stock, * * * consists of real property which is located wholly, or partly, within the State of New York," was intended to apply only to shares of stock in a real estate corporation owning real property in this State, and does not apply to the ownership of stock in a foreign corporation which had among its assets some real estate located in this State as an incident to a business which in no sense could be construed as a real estate business.

Furthermore, the surrogate was wholly without jurisdiction to entertain the proceeding, for the State cannot enforce a tax upon the transfer of stock of a foreign corporation owned by a non-resident decedent, where neither the corporation nor the owner is within the jurisdiction.

APPEAL by Bankers' Trust Company of the City of New York, as executor, etc., from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 5th day of March, 1921, affirming a prior order fixing the transfer tax on the estate of Lena McMullen, deceased.

*White & Case [Joseph F. McCloy* of counsel; *Thomas A. S. Beattie* with him on the brief], for the appellant.

*Lafayette B. Gleason [Schuyler C. Carlton* of counsel], for the respondent.

GREENBAUM, J.:

The record discloses that one Lena McMullen died on May 20, 1919, a resident of the State of Connecticut, leaving a will which was probated in that State; that at the time of her death she was the owner of 500 shares of the preferred stock of the Atlantic Gulf and Pacific Company, a corporation organized under the laws of West Virginia, which was engaged in the business of dredging; that the appraiser appointed by one of the surrogates of the county of New York reported that the 500 shares of stock above mentioned constituted an item of property which was taxable under the Tax Law of this State; that on May 31, 1919, the assets of the company amounted to $3,289,037.95 and the liabilities to $676,445.96, leaving net assets amounting to $2,612,591.99, of which $1,712,100 represented the amount of its capital stock outstanding and $900,491.99 its surplus.

The appraisal of the taxable assets of the estate and their fair market value on May 20, 1919, was as follows: " Real estate, New York — none. Taxable personalty in New York — 500 shares, Atlantic Gulf and Pacific Company pfd., valued at $50,000, taxable in such proportion as the value of the real property of such corporation located in the State of New York bears to the value of the entire property of such corporation, viz., 2349 or $11,745.00."

It was stipulated by the parties that the 500 shares were actually physically within the State of New York when the decedent died. The right to impose the tax in question is asserted under section 220 of the Tax Law, as amended by. chapter 626 of the Laws of 1919, in effect May 14, 1919. The enactment of 1919 was an amendment to said section, as amended by chapter 664 of the Laws of 1915 and chapter 323 of the Laws of 1916. The statute of 1919, so far as relevant to this discussion, reads as follows:

" § 220. Taxable transfers. A tax shall be and is

hereby imposed upon the transfer of any property real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases, subject to the exemptions and limitations hereinafter prescribed: * * *.

" 2. When the transfer is by will or intestate law of real property within this State, * * *, and the decedent was a non-resident of the State at the time of his death; or of property evidenced by or consisting of shares of stock of a foreign corporation, * * * except the shares of stock of a foreign corporation, * * *, constituting, being or in the nature of a moneyed corporation, a railroad or transportation corporation, or a public service or manufacturing corporation as defined and classified by the laws of this State, and the property represented by such shares of stock, * * * consists of real property which is located wholly, or partly, within the State of New York, * * * and if not wholly within the State of New York, then in such proportion as the value of the real property of such corporation, * * * located in the State of New York bears to the value of the entire property of such corporation, * * * and the decedent was a non-resident of the State at the time of his death; * * *."

In this connection it may be observed that the act of 1915 was the first enactment in this State which, with certain exceptions was designed to impose a tax upon the transfer of shares of stock of foreign corporations owned by non-resident decedents.

Among the assets of the Atlantic Gulf and Pacific Company there was certain real estate owned by it known as the Mill Island property, located in the State of New York, valued at $950,762.15, and incumbered by a mortgage of $155,000. Based upon the foreign corporation's ownership of such real property, the shares of stock in question have been held subject to the transfer tax.

The appellant insists that the language of the statute under which the tax was imposed is inapplicable to the stock of the Atlantic Gulf and Pacific Company, for the reason that it is a foreign corporation engaged in the business of dredging, and that the circumstance that in connection with its business it

owned real estate in this State did not bring it within the provisions of the act.

The appellant also contends that the stock in question is in no event liable to a transfer tax in this State, because the surrogate never acquired jurisdiction of the *res* or of the estate of Lena McMullen, and that such a tax would be contrary to the due process of law clauses of the Federal and State Constitutions. (U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.)

At the outset it should be noted that section 220 of the Tax Law, as amended by chapter 626 of the Laws of 1919, under discussion does not contemplate the imposition of a tax upon the shares of stock of a foreign corporation owned by a nonresident decedent, which happen to be physically located in the State of New York at the time of the death of the owner thereof. The statute provides for the payment of a tax upon the transfer of shares of stock of certain foreign corporations owned by non-resident decedents without regard to the physical location of the stock at the time of decedent's death.

No point, therefore, has been made by counsel, nor could one successfully be made, that the 500 shares in question being in the State of New York at the time of the decedent's death conferred jurisdiction upon the court to entertain the proceeding, not only because the statute is silent upon the point, but because it has repeatedly been held in this State and in other jurisdictions that the legal situs of the stock of a corporation is where the corporation exists or where the stockholder has his domicile. (*Matter of Enston*, 113 N. Y. 174; *Matter of James*, 144 id. 6; *Matter of Bishop*, 82 App. Div. 112, 117.)

A careful study of the statute leads us to conclude that it was only intended to reach the stock of corporations known as real estate corporations. The language of the statute directly bearing upon this question is as follows (italics ours): "When the transfer is by will or intestate law * * * *of property evidenced by or consisting of shares of stock of a foreign corporation* * * * *and the property represented by such shares of stock* * * * *consists of real property which is located wholly, or partly, within the State of New York* * * * and if not wholly within the State of New York, then in such proportion as the value of the real property of such corporation

* * * located in the State of New York bears to the value
of the entire property of such corporation * * * and the
decedent was a non-resident of the State at the time of his
death * * *."

What did the Legislature intend by the words " the property
represented by such shares " which " *consists of real property
* * *?*" In *Matter of Bronson* (150 N. Y. 8) the majority
opinion of the court states: " As said in *Jermain* v. *L. S. &
M. S. R. Co.* (91 N. Y. 492) it [meaning each share of stock]
' represents the interest which the shareholder has in the capital
and net earnings of the corporation;' or as PARKE, B., put
it, in *Bradley* v. *Holdsworth* (3 M. & W. at p. 424) it is 'a
right to have a share of the net produce of all the property of
the company.' Corporate shares must be regarded as property
within the broad meaning of that term. Certificates of stock,
in the hands of their holder, represent the number of shares
which the corporation acknowledges that he is entitled to. In
legal contemplation the property of the shareholder is either
where the corporation exists, or at his domicile; accordingly as
it is considered to consist in his contractual rights, or in his
proprietary interest in the corporation."

In his dissenting opinion, Judge VANN, in substantial agree-
ment with the majority opinion as to what a share of stock
represents, says (at pp. 20, 21): " What are shares of stock,
and what rights does the owner thereof enjoy? Judge
ANDREWS answered this question when he wrote in *Plimpton* v.
*Bigelow* [93 N. Y. 599] that ' the right which a shareholder in
a corporation has by reason of his ownership of shares, is a
right to participate according to the amount of his stock in
the surplus profits of a corporation on a division, and ultimately
on its dissolution, in the assets remaining after payment of
its debts.' Chief Justice SHAW answered it when he said that
' the right is, strictly speaking, a right to participate, in a
certain proportion, in the immunities and benefits of the
corporation; to vote in the choice of their officers and the
management of their concerns; to share in the dividends and
profits, and to receive an aliquot part of the proceeds of the
capital on winding up and terminating the active existence
and operations of the corporation.' (*Fisher* v. *Essex Bank*,
5 Gray [Mass.], 378.) Judge EARL, referring to the same

subject, has said that ' a share of stock represents the interest which the shareholder has in the capital and net earnings of the corporation. The interest is of an abstract nature; that is, the shareholder cannot by any act of his, nor ordinarily by any act of the law, reduce it to possession.' (*Jermain* v. *Lake Shore & M. S. R. Co.*, 91 N. Y. 492.) ' A share of stock is an incorporeal, intangible thing.' (*Neiler* v. *Kelley*, 69 Pa. St. 407.) ' The expression, ' shares of stock,' when qualified by words indicating number and ownership, expresses the extent of the owner's interest in the corporation property. The interest is equitable and does not give him the right of ownership to specific property of the corporation, but he does own the specific stock held in his name, and under the rules of law, the property of the corporation is held by the corporation in trust for the stockholders.' (*Bridgman* v. *City of Keokuk*, 72 Iowa, 42.)''

It is thus the law that no specific property of the corporation is specifically represented by its shares of stock so that one may say that a stockholder has a determinable interest, let us say, in certain real estate which the corporation may own.

The act under review reads as though the Legislature assumed that a stockholder's interest in specific assets of a corporation is directly ascertainable and measured by the ratio which the amount of stock owned by a given stockholder bears to the entire amount of stock issued.

Where one unqualifiedly states that the property of a given corporation " consists of real property," it would ordinarily convey the meaning that it is a real estate or realty corporation, as it is popularly called. If the Legislature had not intended to limit the operation of the statute to real estate corporations, one would expect that it would not have stated " the property represented by such shares of stock * * * consists of real property," but would have said " the property represented by such shares of stock * * * *consists in part or wholly of real property or wholly or partly of real estate.*" As bearing upon the probable legislative intent to reach non-resident stockholders of realty corporations owning property in this State, it is not amiss to refer to the position taken by the State through its Comptroller in *Matter of Richards* (182 App. Div. 572), in which the Comptroller was appellant and which

involved the construction of sub.livision 2 of section 220 of the Tax Law, as amended by chapter 664 of the Laws of 1915 and chapter 323 of the Laws of 1916. The court in its opinion said: " It is the contention of the appellant that the amendments in question were made in order to meet a defect in the former law, by which a non-resident might incorporate a real estate corporation, convey to it his real estate in the State of New York, receiving corporate stock in return, and as this was intangible property, thus avoid the imposition of a transfer tax upon his real estate holdings. Thus a premium is claimed to have been placed upon owners of large amounts of real estate becoming non-residents of this State. It is claimed that the amendment of 1915 was passed so as to make any evasion of the law impossible, by having it apply not only to stock thus issued, but to any note, bond or other evidence of indebtedness given in return for the conveyance of real estate."

It must also be borne in mind in this connection that it is the rule of statutory construction that where there is " a doubt upon the question it should be resolved in favor of the taxpayer as represented by the executors and against the taxing power." (*Matter of Fayerweather*, 143 N. Y. 114, 119, citing *United States* v. *Wigglesworth*, 2 Story, 369; *United States* v. *Watts*, 1 Bond, 580; *Partington* v. *Atty.-Genl.*, L. R. 4 H. L. 100, 122, and referring also to " many other cases cited in the brief of counsel for the respondent.")

It is our opinion that the act under review was not intended to apply to the ownership of stock in a foreign corporation which had among its assets some real estate located in this State as an incident to a business which in no sense could be construed as a real estate business. But assuming that our construction of the statute is erroneous, we are also of opinion that the tax in question cannot be upheld for the reason that the surrogate was wholly without jurisdiction to entertain this proceeding.

It has already been pointed out that the State cannot enforce a tax upon the transfer of shares of stock of a foreign corporation owned by a non-resident decedent, where neither the corporation nor the owner is within its jurisdiction. Of course, a foreign corporation owning real property located in

this State may be subjected to a tax so far as such property is concerned, upon the ground that the real property in this State constitutes a *res* over which the State and its courts may entertain jurisdiction. But this jurisdiction would not apply to a non-resident stockholder of such a foreign corporation, for the reason that he is not an owner of the real estate.

In *Matter of Whiting* (150 N. Y. 27) a resident of Rhode Island who died in that State left a will by which he gave his entire estate in trust to be held for the benefit of an infant daughter. At the time of his death he had money in a bank in this State and certain bonds and certificates of stock of both domestic and foreign corporations in a box rented by him in a safe deposit vault in this State. The court held that the stocks of domestic corporations were subject to a succession tax. The appraisement in that case did not include stocks of foreign corporations (see page 29 of opinion) indicating that it was evidently recognized by all concerned in that case that they were not taxable.

In *United States Radiator Corp.* v. *State of New York* (208 N. Y. 144, 152) COLLIN, J., writing for the majority said: " While conditions may exist under which equity will consider the shareholders as the proprietors and the ultimate beneficiaries of the corporate interests, the fact is that a corporation is an individual being capacitated through statutory powers to acquire the title to, own and dispose of real and personal property, enter into contracts, engage in business, sue and be sued and taxed. It is the owner of all the corporate property, real and personal, and within the powers conferred upon it by the charter can deal with it as absolutely as a private individual can with his own. The whole title to it is in the corporation and the shareholders are neither tenants in common nor in any legal sense the owners of it. (*Hyatt* v. *Allen*, 56 N.Y. 553; *Gibbons* v. *Mahon*, 136 U. S. 549; *Lowry* v. *Farmers' Loan & Trust Co.*, 172 N. Y. 137; *Humphreys* v. *McKissock*, 140 U. S. 304; *Buffalo L., T. & S. D. Co.* v. *Medina Gas & El. L. Co.*, 162 N. Y. 67.)" Neither the Surrogates' Court nor any court of the State could acquire jurisdiction over the shares of stock of a foreign corporation owned by a non-resident, excepting where the stock is found within the State

where under some circumstances it may be subject to attachment as a chose in action upon the claim of a creditor, a situation as heretofore observed which need not here be considered, since the statute under review does not contemplate the imposition of a transfer tax upon the stock of a foreign corporation owned by a non-resident decedent, found in this State, but is a comprehensive scheme for taxing all non-resident holders of the stock of a foreign corporation owning real estate situated in the State.

We may conclude with the observation that we know of no provision of the Tax Law or of any other law which would enable the courts to enforce the payment of a transfer tax imposed upon a non-resident decedent, owner of stock of a foreign corporation, when neither the estate of such a decedent, nor the *res* owned by the estate is within the State. An unenforcible tax is no tax.

The order of the surrogate affirming the tax made and entered on June 16, 1920, upon the report of the appraiser is hereby reversed, with ten dollars costs and disbursements to appellant, and the appeal to the surrogate from said appraisal is sustained and the appraisal is set aside and the proceeding remitted to the surrogate for further action in accordance with this opinion.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and proceedings remitted to surrogate for further action in accordance with opinion.

purpose of taking over and carrying on the southern business, receiving pay therefor in the entire stock of the latter corporation; that such transfer was authorized by statute, the provisions of which were fully complied with; that no money or property was lost by the transfer; that there is no allegation that any of the assets of either corporation were or are in this State, and that the plaintiff was a director and official of the defendant corporation up to one month prior to the transfer of the property to the Florida corporation, for, under such circumstances, a receivership can do the plaintiff no possible good and will embarrass the corporations and their creditors.