Surrogate's Court, New York County, June, 1923. [Vol. 121

expressly ratify and shall thereby expressly ratify this agreement and this policy in all its parts."

Another policy for $10,000, taken out for the benefit of his said son, provides for the distribution or payment of interest in semi-annual payments or installments and provides for the payment of the principal sum, $10,000, when said son attains the age of twenty-five years. It also provides: "That in the event of the death of said son subsequent to the death of the insured and before he shall have attained the age of twenty-five years, then the amount so held together with any accrued interest due thereon shall be paid to said son's executors, administrators or assigns."

Other policies amounting to $14,000 were taken out by the said Harry S. Brant in his lifetime upon which the income or interest after his death is payable to the widow for her life and the balance is payable to the son upon the death of the widow.

All of the above-mentioned policies were in full force and effect at the time of testator's death, and provided for the payment of the principal sum of $34,000 to said son.

There is no proof tending to show that the testator left the son unprovided for by any settlement. On the contrary, it does appear that the son was not overlooked by the father, and that provision was made for him by way of insurance.

"The policy of the statute is provision for such a child who is thus unprovided for outside of the will, and neither provided for nor in any way mentioned in the will; not for such a child who may have been provided for by a settlement, and yet is not provided for or is not in any way mentioned in the will. For, of course, the parent might have made fair and just provision for the child outside of any testamentary disposition," citing *Matter of Huiell,* 6 Dem. 354. *Obecny* v. *Goetz,* 116 App. Div. 807.

I hold and decide that John M. Brant, the testator's son, was provided for by the testator by settlement, and that, therefore, he is not entitled to succeed to any part of testator's property, and a decree admitting the will to probate is ordered accordingly.

Decreed accordingly.

---

In the Matter of the Estate of CORNELIA PRIME LOWELL, Deceased.

Surrogate's Court, New York County, June, 1923.

**Transfer tax — value of unlisted stock — real estate corporation — appraisal of properties.**

A non-resident decedent at the time of his death was the owner of stock in a domestic real estate corporation. *Held,* that the market value of the real estate of said corporation, its only asset, was the proper basis for the valuation of the decedent's stock for the purposes of a transfer tax.

An appraisal of the " fair market value " of the several parcels of said real estate was based upon the affidavit of an expert employed by the executors, and the transfer tax appraiser allowed all deductions claimed by the executors as liabilities.  Upon appeal from the order fixing the transfer tax taken on the ground that the stock of decedent was appraised in excess of its true market value, *held*, that it would be assumed that the real estate expert in fixing the fair market value took into consideration the low earning power of the property, and the appeal on the ground taken will be denied.

The transfer tax appraiser held that certain long term notes of the same corporation, unsecured by mortgage upon its real estate, and owned by decedent at the time of his death, were taxable under section 220(2) of the Tax Law, as amended by chapter 626 of the Laws of 1919.  *Held*, that an appeal from the order fixing the transfer tax, upon the ground that said statute is unconstitutional, will be denied.

APPEAL from order fixing transfer tax.

*Carter, Ledyard & Milburn* (*Heber Smith* and *Kenneth C. Johnson*, of counsel), for executors.

*Charles A. Curtin*, for State Tax Commission.

FOLEY, S.  This appeal is taken by the executors from the order fixing the transfer tax on the ground (1) that the shares of stock of the Ray Estate Corporation were appraised in excess of their true market value, and (2) that bonds of the same corporation were improperly included among the assets.  Decedent was a non-resident of this state and died January 17, 1922.

(1) As to the first ground of appeal, the stock owned by her in the Ray Estate Corporation, organized in this state, was valued by the transfer tax appraiser at sixty-four dollars and fifty-five cents per share.  Its assets consisted wholly of real estate in this city.  The appraisal was made on the book value based on an affidavit giving " the fair market value " of the several parcels of real estate by an expert employed by the executors.  All deductions claimed as liabilities were allowed by the transfer tax appraiser.  The market value of the real estate was the proper basis for the valuation of the stock.  *Matter of Paterno*, 182 App. Div. 478; *Matter of Hoffman*, 204 id. 497.  The transfer tax appraiser was not compelled to accept the estimate of the value of the stock given by an officer of the company, who fixed an arbitrary value of thirty dollars per share based solely on the low rate of earnings of the corporation.  It must be assumed that the real estate appraiser took into consideration the low earning power of the property in fixing the fair market value.  The appeal on this ground is denied.

(2) The executor challenges the validity and constitutionality of the provisions of the Tax Law taxing the transfer of the notes of a real estate corporation.  In this estate the debentures or

bonds of the Ray Estate Corporation were in fact long term notes. They were obligations unsecured by mortgages on its real estate. The appraiser found them taxable under subdivision 2 of section 220 of the Tax Law, as amended by chapter 626 of the Laws of 1919, which provides for the taxation in the estate of a non-resident decedent, of the transfer of "shares of stock * * * bonds, notes, mortgages or other evidences of interest in any corporation * * * and the property represented by such shares of stock, bonds, notes, mortgages or other evidences of interest, consists of real property which is located wholly, or partly, within the state of New York." The securities here are embraced within this provision. The corporation is an exact example of those sought to be reached by the legislature, for it was formed by the heirs of the former owner to take over and hold the real estate. *Matter of Richards*, 182 App. Div. 572. While the taxability of the transfer of these notes is subject to grave doubt, I believe that in a court of original jurisdiction the taxing power of the state should be upheld where a contrary decision would require the holding of the statute unconstitutional. Recent decisions reversing the lower courts in such cases have demonstrated the wisdom of that policy. Tax Exemption Statute case, *Hermitage Co.* v. *Goldfogle*, 204 App. Div. 710; affd., 236 N. Y. 554; constitutionality of former section 221-b of the Tax Law, *Matter of Watson*, 226 N. Y. 384, revg. 186 App. Div. 48 and 104 Misc. Rep. 212. This doubt as to the validity of the statute is created by the decisions of the Court of Appeals in *Matter of Fearing*, 200 N. Y. 340, and in *Matter of Bronson*, 150 id. 1. In these cases it was held that mortgages or bonds, individual or corporate, secured by New York real estate, owned by a non-resident and not physically within this state at the time of death, were not "property within the state" and their transfer could not be subjected to a tax. The principal authority relied upon was *State Tax on Foreign-Held Bonds*, 82 U. S. 300, and the reason given was that the legal and actual *situs* of the property was in the domicile of the creditor. These decisions likewise held that the debt, which is evidenced by a note, bond or mortgage, is inseparable from the instrument itself. On the other hand, authority for sustaining the taxability of these corporate notes is found in the decision of the United States Supreme Court in *Blackstone* v. *Miller*, 188 U. S. 189. In that case the Supreme Court modified its opinion in the *Foreign Bonds* case and held that it was within the sovereign power of the state to treat the debt as property at the domicile of the debtor. The learned opinion of Mr. Justice Holmes demonstrated that power over the person of the debtor

confers jurisdiction and that where the courts of the state of the debtor must be resorted to for a recovery upon the debt, the legislature of that state may subject the debt to taxation as against the non-resident creditor. Massachusetts has held taxable the bonds of that state kept by a non-resident at his domicile. In *Bliss* v. *Bliss*, 221 Mass. 201, the fact that the executors of a nonresident owner of the bonds were required to come into that state to secure a transfer by registration, and thus complete their title, was held sufficient ground for the imposition of a tax upon their transfer. Similarly in this estate all of the property of the corporation is located within this state, and in case of default, our courts would be appealed to in an action to recover upon the obligation. Again, the terms of the notes in this estate required them to be transferred by registration at the company's office here, and interest was to be paid only to the registered owner. At the time of the *Fearing* decision, the Tax Law did not specifically mention the securities brought in by the amendment of 1919.

*Matter of McMullen*, 199 App. Div. 393; affd., 236 N. Y. 518, is distinguishable from the present case for the following reasons: In the former case the securities were those of a foreign and not a domestic corporation, and the real estate formed only a small portion of its assets. It would appear, therefore, that the legislature had the power to levy a tax upon the transfer of notes of a domestic real estate corporation owned by a non-resident. The appeal of the executors is denied. Submit order on notice.

Decreed accordingly.