ESTATE OF SHEPARD.˙ [Two cases.]

*October 20, 1923—June 3, 1924.*

*Inheritance taxes: Jurisdiction to impose tax: Subject matter: Non-residents: Stock in foreign corporation licensed in Wisconsin: Constitutional law: Validity of tax: Order of county court fixing tax: Appeal: Original action to recover amount paid.*

1. An inheritance or succession tax is a tax on the right to receive property from a decedent, and attaches to a person and not to property; and although it is enforced through a control of the transfer of the property, the only relation that the property has to such tax is that its value measures the amount of the tax. p. 91.

2. The property of a corporation is its property and not that of the stockholders. The capital belongs to the corporation, and the capital stock, when issued, belongs to the stockholders; the former may be either real or personal property, but the latter, when issued, is always personal. p. 91.

3. The state must have jurisdiction of the subject matter of an inheritance tax, such subject matter being the transfer of title to property from a decedent to another; and if the state has nothing to do with the transfer it has no jurisdiction to impose an inheritance tax. p. 91.

4. The state cannot deny the right of transfer of property from a decedent to another altogether, because the right to inherit is a natural right subject only to reasonable restrictions. p. 91.

5. To confer jurisdiction to impose a valid inheritance tax, either the property transferred must be within the state or the decedent must have died a resident thereof, or some recourse to the courts or laws of the state must be necessary to secure the transfer. p. 92.

6. No recourse being necessary to the laws of this state to secure the transfer of the shares of a foreign corporation owned by a nonresident decedent to nonresidents, the state acquired no jurisdiction to tax such transfer, notwithstanding such corporation had property in the state and was licensed to do business therein. p. 92.

7. Since sub. (3), sec. 72.11, Stats., is essentially a declaration of a rule of computation of the inheritance tax in certain cases and not a declaration of a liability to such tax, which is declared in sub. (1) to (3), sec. 72.01, and since the property of a corporation is held to be its property and not that of the

stockholders, neither sec. 72.11 nor sec. 226.02 (providing the conditions on which foreign corporations may do business within the state) includes the imposition of a tax on the transfer of stock held by a nonresident decedent in a foreign corporation having property and being licensed to do business in the state.   p. 94.

8. So much of sec. 72.11, Stats., as prescribes the rate of taxation upon stocks held in foreign corporations licensed to do business in this state, under the conditions of this case, viz.: a nonresident decedent and nonresident transferees, the property to be transferred not within the state, and no recourse to the laws of this state being necessary to secure the transfer,—is invalid.   p. 96.

9. An appeal lies from an order of the county court fixing the amount of an inheritance tax (*Beals v. State,* 139 Wis. 544, overruled) ; and the remedy by appeal is recommended as the more speedy and inexpensive one, although there is a concurrent remedy afforded by an original action to recover taxes paid the state under protest.   p. 97.

CROWNHART, J., dissents.

ORIGINAL ACTION brought in this court to recover the amount of an inheritance tax paid to the state of Wisconsin by the plaintiffs under protest.   Joined with this action is an appeal from an order of the county court of Dane county directing such inheritance tax to be paid.   The issues involved in the two proceedings are the same.

The facts necessary to show the questions of substantive law to be decided by the court are as follows: Annie Rockwell Shepard, a resident of New Jersey, died in said state in 1921, leaving a will naming plaintiffs as executors.   The will was duly probated and plaintiffs were appointed as executors and qualified as such.

At the time of her death the decedent had no property, real or personal, situated in this state, but she owned a certain number of shares of preferred stock and a certain number of shares of the common stock in the Goodyear Rubber Company, a New York corporation.   The Goodyear Rubber Company has its principal place of business in the state of New York, but at the time of the death of the decedent

Estate of Shepard, 184 Wis. 88.

and for a number of years prior thereto it was duly licensed to do and did business in this state, and had personal property therein.

At the time of the death of the decedent the certificates for the above mentioned shares of stock were in her actual, physical possession in New Jersey, and ever since the qualification of plaintiffs as executors have been and are now in their possession in New Jersey, as executors. The county court found plaintiffs liable for an inheritance tax of $7,147.92 under the provisions of sub. (3), sec. 72.11, Stats. 1921. The amount was paid under protest, and this action was brought to recover it from the state, alleging it to have been illegally· exacted. Other appropriate allegations showing plaintiffs' compliance with all conditions precedent to maintain the action are contained in the complaint. The State demurred to the complaint on the ground, among others, that it does not state facts sufficient to constitute a cause of action, and plaintiffs, as ·before stated, appealed from the order directing them to pay the tax.

For the appellants there was a brief by *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* counsel, all of Milwaukee, and oral argument by *Mr. Kemper.*

For the respondent there was a brief by the *Attorney General, Franklin E. Bump,* assistant attorney general, and *John Harrington,* inheritance tax counsel, and oral argument by *Mr. Bump* and *Mr. Harrington.*

In opposition to the constitutionality of the inheritance tax law there was a brief by *Edwin M. Ashcraft* of Chicago and *Sanborn, Blake & Aberg* of Madison, as *amici curiæ.*

The following opinion was filed February 12, 1924:

VINJE, C. J. The question to be solved is whether this state can lawfully impose an inheritance tax on the transfer of shares of stock, owned and possessed by a nonresident, in a corporation organized and having its principal place of business in another state, but having property and being licensed to do business in this state.

Before proceeding to answer the question it is deemed desirable to state some fundamental and well established principles of law that will serve to delimit the field of inquiry and to act as landmarks pointing out the path that leads to the correct answer. No attempt will be made to establish the soundness of these principles because they have been firmly incorporated into the jurisprudence of our state by numerous and unbroken decisions, and are, with few, if any, exceptions, the accepted law in state and federal courts alike. By a close adherence to fundamental principles, long and circuitous routes that often lead astray may be avoided, and in the light of such principles arguments that seem laden with an obscure potency dissipate like mists before the morning sun. Among such principles involved are these:

(1) An inheritance or succession tax is a tax on the right to receive property from a decedent. It attaches to a person and not to property or to an interest in property, though it is imposed and enforced through a control of the transfer of the property. The only other relation that the property has to it is that its value measures the amount of the tax. *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *Montague v. State,* 163 Wis. 58, 157 N. W. 508.

(2) The property of a corporation is its property and not that of the stockholders. There is a fundamental difference between the capital of a corporation and its capital stock. The former belongs to the corporation; the latter, when issued, to the stockholders. The former may be either real or personal property; the latter, when issued, is always personal property. See cases and statutes cited *infra.*

(3) The state must have jurisdiction of the subject matter of the tax. Such subject matter is the transfer of title to property from a decedent to another. If the state has nothing to do with such transfer it has no jurisdiction to impose an inheritance tax. Its right to impose the tax springs from its right to prescribe reasonable conditions for permitting and making the transfer. Our state cannot deny

the right of transfer altogether, because the right to inherit is held to be a natural right subject only to reasonable restrictions. *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627. If the property transferred is in this state, it can tax the right to its succession because it controls and has jurisdiction of the property to be transferred. Or, when a resident of this state dies possessed of property, the state can impose a tax because it has jurisdiction of the estate of the deceased. Sec. 72.01, Stats. 1923. But if the decedent was not a resident of the state at the time of his death and the person receiving it is a nonresident and the property to be transferred is without the state, then there is no right to tax because the subject matter is beyond the jurisdiction of the court. Either the property transferred must be within the state or the decedent must have died a resident thereof or some recourse to the courts or laws of our state must be necessary to secure the transfer in order to confer jurisdiction to impose a valid tax. Sec. 72.01, Stats. 1923.

Applying the facts of the present case to the above stated principles of judicial and statutory law, we find (1) that the property to be transferred was not within the state: it was in New Jersey; (2) that the decedent was not a resident of this state at the time of her death but of New Jersey, and the persons to whom transfers were made were nonresidents; (3) that no recourse to the laws of this state was necessary to secure the transfer of the property. New York, the home of the corporation, could authorize the transfer of the stock. Under such circumstances it has uniformly been held that the state acquires no jurisdiction to tax. *Matter of Bronson,* 150 N. Y. 1, 8, 44 N. E. 707; *McMullen's Estate,* 199 App. Div. 393, 192 N. Y. Supp. 49, affirmed in 236 N. Y. 518, 142 N. E. 266, on the ground that there was no transfer of property within the state; *Welch v. Treasurer,* 223 Mass. 87, 111 N. E. 774; *Tyler v. Dane Co.* 289 Fed. 843; *Oaksman v. Small,* 282 Ill. 360, 118 N. E. 775; *State ex rel. Peterson v. Dunlap,* 28 Idaho, 784, 156 Pac. 1141; *In re Estates of Harkness,* 83 Okl. 107, 204

Pac. 911; sub. (1) to (3), sec. 72.01, Stats. 1923; Gleason & Otis, Inheritance Tax (2d ed.) 74, 320.

The opinion might well close here were it not for some contentions made by the state that deserve more detailed consideration.

The attorney general, in arguing that an affirmative answer to the question is the only correct one that can be given, relies principally upon two statutory provisions, both of which he claims are constitutional enactments. The first is sub. (3) of sec. 72.11, Stats. 1923, which provides that

"Where stocks, bonds, mortgages, or other securities of corporations organized under the laws of this state or of foreign corporations owning property or doing business in this state shall have been transferred by a nonresident decedent, the tax shall be upon such proportion of the value thereof as the property of such corporation in this state bears to the total property of the corporation issuing such stocks, bonds, mortgages, or other securities."

The second is sec. 226.02, Stats. 1923, formerly sec. 1770*b*, providing the conditions upon which foreign corporations may do business within this state.

Our present inheritance law was first enacted in 1903 and has since been amended in various matters. Sub. (3) quoted above was an amendment made in 1913. It will be noticed that it is essentially a declaration of a rule of computation in certain cases, and not a declaration of a liability to an inheritance tax. The declaration of liability is found in sec. 72.01 and in the first three subdivisions thereof. They read, omitting exception:

"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation . . . within the state, . . . in the following cases except as hereinafter provided:

"(1) *While a resident of state.* When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

"(2) *Nonresident's property within the state.* When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a non-resident of the state at the time of his death.

"(3) *Transfers in contemplation of death.* When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

It requires no careful scrutiny of these provisions declaring when a tax shall be imposed to disclose that they do not include the imposition of a tax upon the transfer of stock held and possessed by a nonresident decedent in a foreign corporation having property and being licensed to do business in this state, unless the property of the corporation is held to be the property of the stockholders. But this court has never so held. *Button v. Hoffman,* 61 Wis. 20, 20 N. W. 667; *Van Dyke v. Milwaukee,* 159 Wis. 460, 150 N. W. 509. In the latter case it was held that dividends declared after the passage of the income tax law out of profits of the corporation made before the passage of the act were taxable because the profits of the corporation did not become the property of the stockholders till distributed as dividends. See, also, *Miller v. Payne,* 150 Wis. 354, 136 N. W. 811; *Will of Pabst,* 146 Wis. 330, 131 N. W. 739. The supreme court of the United States has never so held. It has declared that the property of the shareholders in their respective shares is distinct from the corporate property, franchises, and capital stock. *Hawley v. Malden,* 232 U. S. 1, 34 Sup. Ct. 201; *Eisner v. Macomber,* 252 U. S. 189, 40 Sup. Ct. 189. In *Des Moines Nat. Bank v. Fairweather,* 263 U. S. 103, 44 Sup. Ct. 23, the court had occasion to point out the difference between corporate assets of the corporation and shares. It held the former belonged to the corporation as an artificial entity and the latter to the stockholders.

Sec. 182.05, Stats. 1923, provides that "the capital stock of every corporation, divided into shares, shall be deemed personal property." Such has been and still is the settled law of this state, and it is beyond the power of the court to alter it even if it so desired. The shares of stock in question could be transferred on the books of the corporation in New York, and neither our courts nor our laws would have to be invoked to effect the transfer. They have naught to say in the matter. How then can the state say to plaintiffs, as it must in order to impose a valid tax; "In return for my permitting the transfer of this property to you I require you to pay me a certain part thereof." The answer to such question would be: "Thanks, I do not need your permission, and I am not obliged to pay you when you confer no benefit and render no service."

The argument that the decedent had an equitable interest in the property of the corporation located within the state is beside the question, for, as already stated, an inheritance tax is not a tax upon property or an interest in property whether legal or equitable, but a tax upon the right to succeed to property left by a decedent; and we have already pointed out how under our statutes the state acquires jurisdiction to invoke the right to tax. For the reasons stated we will not discuss or distinguish a large number of cases cited by the state showing to what extent courts have gone to reach by taxation property or interests in property.

The other statute relied upon by the attorney general is sec. 226.02, Stats. 1923, formerly sec. 1770b, prescribing the conditions upon which foreign corporations may do business in this state. The argument is that by accepting the conditions of that section they have agreed to obey and abide by our laws, and therefore cannot question their validity. Assuming but not deciding that a corporation can bind its stockholders, no lengthy discussion is necessary to refute the fallacy of this claim. The foreign corporations by agreeing to abide by the conditions of sec. 226.02 agree to abide

.by and obey our valid laws, not our .void and unconstitu-tional laws. If we required them to do the latter, the federal supreme court would speedily say we could not law-fully do so. *Terral v. Burke Const. Co.* 257 U. S. 529, 42 Sup. Ct. 188, 66 Lawy. Ed. 352, 21 A. L. R. 186. It there held that a state cannot exact as a condition for doing busi-ness within the state obedience to a state law that is repug-nant to constitutional provisions. This court has frequently said that an unconstitutional law is no law at all. It has no force or efficacy and cannot be obeyed. The argument that since the tax upon nonresidents is the same as upon residents the law is therefore a valid and fair one is of no weight, because the fact that an illegal tax upon a nonresident is no greater than a legal tax upon a resident does not justify the former. Were such an argument a valid one we could tax the whole world.

Unless a clear distinction is kept in mind between the capital of a corporation and its capital stock, and between the property of the corporation and the property of the stockholders as evidenced by their shares of stock, it is easy to get the property of the plaintiffs into this state, certainly to get an equitable interest in property located within our borders. But such confusion of terms brings us nowhere, because even under such construction our laws are not in-voked to do anything in the way of a transfer, and hence we are without jurisdiction to impose a valid tax.

We heartily concur in the state's desire to avoid multiple taxation, but it must be secured, if at all, by constitutional means. And unless concurred in by other states every addi-tional method a state discovers to impose a legal tax adds to multiple taxation. But it is a question of power, not of policy.

So much of sec. 72.11 as prescribes the rate of taxation upon stocks held in foreign corporations under conditions existing in this case is held unconstitutional.

As noted in the statement of facts, there is joined to the

original action an appeal from the order of the county court directing the tax to be paid, and the state urges us to overrule *Beals v. State,* 139 Wis. 544, 121 N. W. 347, in so far as it holds that the ascertainment of the inheritance tax by the county court is not a judicial act subject to review by appeal, and to sustain the demurrer to the original action on the ground that the remedy lies by appeal from the order. Certain it is, that since the decision in the *Beals Case* a number of cases have come here upon appeal either directly or indirectly from the action of the county court in ascertaining the inheritance tax. Among such may be mentioned *State v. Thompson,* 154 Wis. 320, 142 N. W. 647; *Smith v. State,* 161 Wis. 588, 155 N. W. 109; *Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734; and *Estate of Stephenson,* 171 Wis. 452, 177 N. W. 579. As far as the mere computation of the tax is concerned or the valuation of the property when ascertained that it is taxable is concerned, the action of the county court may well be said to be ministerial. But in looking back at the cases mentioned and others it will be found that usually the question arises as to whether or not certain property is taxable, especially in the case of gifts. In view of the long continued practice of entertaining such appeals, the speedy and inexpensive remedy by appeal as compared with an original action to recover taxes paid under protest, and especially in view of what was said in *State v. Porter,* 178 Wis. 556, 190 N. W. 473, we reach the conclusion that the *Beals Case* should be overruled in so far as it holds that no appeal lies from an order of the county court fixing the amount of an inheritance tax. And the remedy by appeal is recommended as the more speedy and inexpensive one. At the time the *Beals Case* was decided it was not so easy to foresee all the judicial elements that might and often do enter into the ascertainment of an inheritance tax, and a lack of knowledge which experience has now supplied was no doubt the reason for the decision.

However, the fact that we now hold that there is a rem-

edy by appeal does not destroy the original action. The remedies, for the present at least, may be held to be concurrent. It would work needless hardship to the present plaintiffs to have to begin all over again to collect from the state what they were unjustly called upon to pay. Since complete relief can be had in the original action, we do not deem it necessary to do more than reverse the order appealed from.

*By the Court.*—The demurrer to the complaint is overruled, and judgment is ordered entered for plaintiffs as prayed for in the complaint.

The following opinion was filed March 12, 1924:

CROWNHART, J. (*dissenting*). I respectfully dissent because I am impelled to the belief that the decision of the court has been reached by wrong reasoning. It does the state of Wisconsin and its taxpayers a great and lasting injustice; discriminates against domestic corporations; favors foreign corporations; discriminates in favor of foreign investors in foreign corporations doing business in this state; and works against the welfare of foreign investors in domestic corporations. It encourages evasion of our laws and the fraudulent holdings of stock without our jurisdiction, to escape just, fair, and reasonable taxes; it enables foreign investors to seek and receive the protection of our laws without rendering a fair equivalent.

In the first place, I do not think the court has given to our statutes the presumptions of constitutionality to which they are entitled under uniform decisions of the highest court of the state and nation. Mr. Chief Justice DIXON, who sat in at the making of our constitution, said that it is only when a statute can be seen to be unconstitutional at first blush that this court should so declare. And the same thought has been repeatedly stated in another way by all the courts; that is, a statute will only be held unconstitu-

tional when it is so plainly so that reasonable men may not differ thereon; or, when it is unconstitutional beyond reasonable doubt. We profess but fail to follow the rule, it seems to me. For ten years the provision in question has been the law of this state, accepted as such by able lawyers, and many thousands of dollars have been collected thereunder without protest. Would this have happened if the law were so plainly unconstitutional as to have been seen at first blush? I think not.

We may premise this case by the admitted facts that the statutes here in question fix a fair, reasonable, and just basis of taxation; that they seek to avoid discrimination; that they seek to prevent duplication of taxes on the same property for the same purpose; and that there is a crying need for the method provided by such statutes. These facts were admitted on the argument and not open to denial. Wherein does the court find any specific provision of our constitution that is offended by the statute? None can be pointed out except the due-process clause. Do these statutes offend against such provision?

It is trite to say that "the property of a corporation is its property and not that of its stockholders," but it is an expression of a mere fiction of law, not accurate for any purpose, and this fiction should give way to the statutes on the subject. The legal title is in the corporation, but the corporation is trustee for the shareholders and the shareholders have an equitable interest in the property. They may by vote dissolve the corporation and repossess their property at any time.

Likewise it is true that there is a difference between a corporation's capital and its capital stock. Its capital is the value of its property; its capital stock represents the investment of the stockholders, but in legal parlance the difference is shadowy and immaterial. It is not correct to say, however, that the former belongs to the corporation and the latter to the shareholders. The legal title to both belongs

to the corporation; the certificates of stock belong to the shareholders and they represent the equitable interest of the shareholders in the capital and capital stock of the corporation.   The capital stock (not certificates of stock), under our statutes, is personal property, and the certificates are not property but merely evidence of property interest in the corporation.

That before it may levy a transfer tax on the foreign shareholder of a foreign corporation the state must have jurisdiction of the person or of the property to be transferred, I agree.   That the state has that jurisdiction, I maintain is capable of demonstration: 1. No foreign corporation can enter the state except on such conditions as the state may impose, except where the constitution provides otherwise.   2. Stockholders, in organizing a corporation, make the corporation their agent to do the business authorized by the articles of incorporation, and shareholders by subsequent purchase are bound by the same conditions as the original incorporators.   3. A corporation submitting to the laws of this state speaks for its shareholders, and they are bound by its action.   4. The foreign shareholder has exactly the same kind of property and the same kind of interest in a foreign corporation doing business in this state as a foreign stockholder has in a domestic corporation doing business in this state.   It is admitted that the foreign stockholder of a domestic corporation may be assessed a transfer tax.   5. The state may impose on the foreign corporation, as a condition of doing business in this state, exactly the same conditions it imposes on its domestic corporation, except as the federal constitution may provide otherwise.   It has done so.   6. The conditions binding on foreign shareholders of a domestic corporation may be made just as binding on the foreign shareholder of a foreign corporation doing business under the laws of this state as upon the shareholders of the domestic corporation.   That follows as axiomatic from the power of the state to impose conditions on

such foreign corporation seeking to do business in this state. The state has so provided by statute. 7. The transfer tax paid by the plaintiff was imposed upon the corporation as a condition of its doing business in this state, and when it accepted that condition, as it did by express agreement, its stockholders were bound by its agency to act for them in its corporate affairs. The foreign corporation has the same right to speak for its stockholders as the domestic corporation has to speak for its stockholders. The two corporations stand on a par in this respect; likewise the foreign holders of shares of stock in the one corporation are equally bound to comply with the laws of the state applying to their respective corporations.

I maintain with confidence based on a careful search of the authorities that the foregoing propositions are sustained by such authorities, and that there is no precedent to the contrary except the single case of *Tyler v. Dane Co.* 289 Fed. 843, in the United States district court for the Western district of Wisconsin. This case has been appealed by the state. Every case cited by the court to the contrary is distinguishable on the law and the facts. None was involved under statutes like those of Wisconsin. To my mind the court has made the palpable mistake of reasoning in a circle from a wrong assumption. It contends that our statutes are unconstitutional as applied to plaintiffs because of lack of jurisdiction, and there is lack of jurisdiction because the statute is unconstitutional. Neither premise is true. Jurisdiction is obtained of the property because the corporation, as the agent of plaintiff, brings the property into the state and expressly consents to its jurisdiction as to that property. The law is constitutional because it deals with taxation, the subject matter of which is actually, physically, within the state.

It seems fatuous to cling blindly to the statement that the tax is on transfer of property and not on property. No one denies this; but the property in the state measures the

amount of the tax, and the collection of the tax is by means
of the prohibition of transfer of property until the tax is
paid.    Our statutes are fair and reasonable and not dis-
criminatory.    Foreign corporations and domestic corpo-
rations are treated exactly alike.    Foreign stockholders with
property interests of exactly the same nature and extent
within the state are treated exactly like foreign stockholders
in domestic corporations.

It is claimed by the plaintiffs and the opinion of the court
that plaintiffs were not required to submit to our laws to
secure a transfer of the stock—they might snap their
fingers under our noses and go into the state of New York,
the home state of the corporation, and there compel the
transfer.    If so, why are they here, 1,500 miles from home,
when all they had to do was to step across the state line and
begin their action?    I think they were well advised by com-
petent counsel.    Had they gone into court by mandamus in
New York for such purpose, the corporation could have
answered in equity and set up the conditions under which it
entered Wisconsin, and then have referred to sub. (6), sec.
72.11, Stats., which reads:

"(6) *Reports; duty to pay tax.*    The tax commission
shall require such reports and information, and shall make
such orders, rules, and regulations as it may deem necessary
to enable the commission to secure the necessary informa-
tion from corporations, domestic and foreign, and to ascer-
tain the amount of and collect such tax; and no holding
company or other corporation subject to the provisions of
this section shall deliver or transfer any such stocks, bonds,
mortgages, or other securities of a nonresident decedent
based upon or representing in whole or in part, directly or
indirectly, the value of Wisconsin property, or stocks, bonds,
mortgages, or other securities of a Wisconsin corporation
or a corporation owning property in this state, without re-
taining a sufficient portion or amount thereof to pay any
tax which may thereafter be assessed on account of such

transfer, except upon order of the proper court or a certificate of the tax commission."

I am constrained to believe that the New York courts would have quashed the writ. And I am quite certain that plaintiffs must have been so advised by New York attorneys; otherwise they would not be here. It would appear that plaintiffs chose the wiser course when they appealed to Wisconsin courts. It is quite true that plaintiffs were not required to come into court in Wisconsin. The corporation, however, had, as a condition of doing business in this state, agreed to withhold transfer of the stock until a sufficient sum had been paid to it to cover the tax.

It seems to me that under no consideration of this case are the plaintiffs entitled to recover. Take the assumption of the court that our state had nothing to do with the transfer of plaintiffs' property; that they had the right to step across the line into New York and there compel the transfer and thus wholly ignore the Wisconsin law—let me inquire, then, why they did not do so? Why did they come from New Jersey to Wisconsin and voluntarily go into the Dane county court and there petition the court to assess the tax, and expressly waive notice and consent to the jurisdiction and judgment of the court? And having done so, what right in morals or equity have they to complain? It is not the amount of the tax about which they complain, but of lack of jurisdiction. They invoked the jurisdiction of the court—they submitted to it; they are estopped from appealing to the original equitable jurisdiction of this court to recover money paid into the county court under a void assessment, as they claim.

The proposition of law here set forth seems to be supported by overwhelming authority when rightly considered. A discussion of the cases has become useless, unfortunately as it may be, in view of the fact that the federal

courts will undoubtedly follow the construction of this court placed on our own constitution and statutes.

I think the tax should have been sustained and the judgment of the county court affirmed.

A motion for a rehearing was denied, without costs, on June 3, 1924.