In the Matter of the Application of ALBERT SOCOLOW, Appellant, Respondent, for a Peremptory Mandamus Order against VINCENT B. MURPHY, Comptroller of the State of New York, and Others, Respondents, Appellants.

Third Department, January 5, 1927.

**Taxation — transfer tax — executors paid in 1920 amount representing their estimate of tax — tax was finally adjusted in 1926, by order, against interests presently subject to tax, and against contingent remainders at highest rate — adjustment showed overpayment by executors in 1920 — interest not allowable either on overpayment or on amount adjusted against remainders at highest rate.**

In 1920 the executors paid to the State Comptroller the amount of the transfer tax as estimated by them and received a temporary receipt for the payment. The tax was not finally adjusted by the Surrogate's Court until March 8, 1926. At that time the tax was fixed as to interests presently subject to tax and adjusted as to contingent remainders at the highest rate. The adjustment showed that the executors had overpaid the tax in 1920 by $53,653.35.

The executors are not entitled to interest on the amount of such overpayment.

The executors are not entitled to interest from 1920 on the tax adjusted against the contingent remainders at the highest rate, for until the tax was finally adjusted in 1926, the Comptroller had no knowledge that there were contingent interests and was in no position ·to separate and deposit funds awaiting the contingencies that would eventually determine the exact amount of the tax.

CROSS-APPEALS from different parts of a peremptory mandamus order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 28th day of July, 1926, directing the State Tax Commission to refund excess payments of transfer tax, part without interest and in part with interest.

*Cadwalader, Wickersham & Taft* [*Francis Smyth* and *Wendell Davis* of counsel], for the petitioner.

*Albert Ottinger, Attorney-General* [*Henry S. Manley, Deputy Attorney-General,* and *Seth T. Cole* of counsel], for the Comptroller and Tax Commission.

DAVIS, J. The executors of an estate being administered in Rhode Island discovered that they were liable to pay a tax on property of the decedent in this State. Without proceeding to have the tax determined, they estimated the amount they might be obligated to pay and made payment of $175,750 to the Comptroller, taking a " temporary receipt." This payment was made September 3, 1920, within six months after the death of the decedent, and enabled the executors to obtain the five per cent discount allowed by section 223 of the Tax Law.

It was not until March 8, 1926, that the transfer tax was finally adjusted and determined by proceedings in the New York County Surrogate's Court instituted by the executors. It then appeared that the tax on interests presently subject to tax was $36,857.72; and on contingent remainders subject to the exercise of general powers of appointment, the tax was $87,081.82 (less the five per cent discount). This latter tax was assessed at the highest rate. (Tax Law, § 230.) The original deposit having exceeded the total tax, there was an excess to be refunded amounting to $53,653.35. The Tax Commission is willing to refund this sum. The difference between the parties relates to the payment of interest.

The executors have assigned their right to the refund and interest to the petitioner. He claims interest at six per cent on the deposit from September 3, 1920, except on the item of $36,857.72. The learned court below held that as to the item of $53,653.35 interest should not be allowed. We agree with his conclusions in that respect. As to the $87,081.82 item, it was held below that the petitioner was entitled to interest thereon at the rate of four per cent. (127 Misc. 659.) We take a different view.

The latter item is, as we have said, the tax upon remainders which may or may not vest, depending upon future contingencies. A tax was imposed upon such transfers at the highest rate which on the happening of any of the contingencies or conditions would be possible, and was due and payable forthwith. Thereafter upon the happening of the contingencies or conditions, it is the duty of the executors to apply for an order modifying the preceding taxing order, so as to provide for the final assessment and determination of the tax. Thereupon the executors become entitled to a return of the overpayment. (Tax Law, § 230.) It is the duty of the Comptroller whenever such a tax has been determined at the highest rate, to retain and hold to the credit of the estate so much thereof as represents the difference between the tax at the highest rate and the tax which would be due if the contingencies or conditions had happened at the date of the appraisal; and to deposit such sum in a bank at interest to the credit of the estate, paying the interest thereon when collected to the executors. (Id. § 241.)

The claim to interest is surely not based on any duty of the Comptroller to invest the difference between the high and low rate of tax on contingent interests and pay interest on this fund retained by him under the provisions of section 241. Until the amount of the tax had been fixed in the proceeding instituted by the executors, the Comptroller had no knowledge that there were contingent interests, and was in no position to separate and deposit

funds awaiting the contingencies that would eventually determine the exact amount of the tax. We speak of the " Comptroller," for it was he who had jurisdiction of these matters until by chapter 90 of the Laws of 1921 those duties were transferred to the Tax Commission.

The basis of the claim for interest seems somewhat obscure. There is no positive statute directing payment of interest on tax refunds. In certain instances where refund is directed, interest is expressly disallowed. (Tax Law, § 225.) Nor is there express authorization by statute for the payment of transfer tax before assessment. By prompt and diligent methods it is likely that the representatives of an estate may ascertain the assets, debts and beneficiaries, have the tax duly adjusted and make payment thereof within six months, thus saving the five per cent discount. In other cases such procedure may be difficult or impossible. To avoid hardships which might result in such cases, preventing the transfer of securities (Id. § 227) and the incurring of penalties (Id. § 223) a wise and benign practice has developed in the Comptroller's office permitting the executors to make their own estimate of the tax and pay it tentatively, thus giving them opportunity to proceed with more leisure and certainty in their administration of the estate. This is now formally recognized by article 238 of the Regulations made by the Tax Commission. It is a policy mainly devoted to the interests of estates. Such payment is purely voluntary; the State neither invites nor compels it. Advantages may be lost or penalties may follow if the tax is not assessed promptly, but that depends either upon dilatory conduct of the representatives of the estate or upon circumstances over which no one has control. If it turns out that the deposit was insufficient, then the estate is given credit for the amount and held liable for the balance with penalties. (*Matter of Jacob* v. *Gilchrist*, 211 App. Div. 62.) If there is a surplus, that is returned and the practice has been to pay no interest.

In general the obligation to pay interest arises either by statute, by agreement, express or implied (*Matter of Trustees, etc.*, 137 N. Y. 95); by custom and usage (*Woerz* v. *Schumacher*, 161 N. Y. 530); or for some default or violation of duty where principles of justice and equity impose it. (*Blun* v. *Mayer*, 189 N. Y. 153, 158; *Williams* v. *American Bank*, 4 Metc. 317.) Often the liability depends upon whether the amount due is liquidated or unliquidated. (*White* v. *Miller*, 78 N. Y. 393; *Sweeny* v. *City of New York*, 173 id. 414; *Faber* v. *City of New York*, 222 id. 255; *Demotte* v. *Whybrow*, 263 Fed. 366, 368.) In other cases it depends upon whether there has been demand and default. (*Blackwell* v. *Finlay*,

233 N. Y. 361.) The obligation of the State to pay interest is not materially different from that of individuals.

We find none of these fundamental grounds of obligation present here. The petitioner cites no statute as the basis of his rights. There was no express agreement; and none can be implied from the fact that in depositing the money for an undetermined tax, the executors asked that the surplus, if any, be refunded. It was an entirely voluntary act undertaken for their own advantage. They furnished no facts from which the Comptroller could ascertain whether the estimate made by the executors was sufficient or excessive. It was in the nature of a tender or deposit estimated by the obligor as sufficient to meet an obligation then existing, the amount of which was not definitely determined, and could not be then ascertained by the party receiving it. No doubt it would often be convenient for executors to deposit funds with the State for an indefinite time and obtain interest thereon at four or six per cent. But the State is not a bank, and cannot be required to act as one without its knowledge or consent. There is no custom and usage shown of paying interest on such refunds. There has been no violation of duty by the Comptroller giving rise to a claim based on equitable principles. The duty of making liquidation of the amount to be refunded rested with the executors. This was not done. There was no demand for payment of an excess followed by refusal, furnishing legal reason for an interest charge.

We have not overlooked the fact that the State has been required to pay interest on the refund of a tax illegal and void, or wrongfully collected (*Matter of O'Berry,* 179 N. Y. 285; *Matter of Hanford,* 186 id. 547); or that it may be so liable on " a just debt " in the nature of a contract (*People* v. *Canal Commissioners,* 5 Den. 401); or on a sum fixed for damages to property caused by its wrongful act. (*Paduano* v. *State,* 203 App. Div. 503.) Those principles are not applicable here. The claim of petitioner is not at all similar in its facts to those we considered in *People ex rel. Metropolitan Trust Co.* v. *Travis* (191 App. Div. 129), where the Comptroller wrongfully withheld the excess tax.

The order should be modified by striking out from the 1st paragraph the part allowing interest at four per cent per annum from September 3, 1920; and as so modified affirmed, with costs to the State Tax Commission.

COCHRANE, P. J., VAN KIRK, HINMAN and MCCANN, JJ., concur.

Order modified by striking from the first paragraph the part allowing interest at four per cent per annum from September 3, 1920, and as so modified affirmed, with costs to the State Tax Commission.