Beck and others, Plaintiffs, vs. The State, Defendant.

*February 10—June 18, 1928.*

For the plaintiffs there were briefs by *Lines, Spooner & Quarles,* attorneys, *Louis A. Dahlman* and *George Ballhorn,* guardians *ad litem* for minor plaintiffs, and *Malcolm K. Whyte,* of counsel, all of Milwaukee, and oral argument by *Mr. Whyte* and *Mr. L. S. Clemons* of Milwaukee.

For the defendants there were briefs by the *Attorney General, Franklin E. Bump,* assistant attorney general, *Eugene Wengert,* district attorney of Milwaukee county, *Daniel W. Sullivan,* corporation counsel, and *C. Stanley Perry,* assistant district attorney, and oral argument by *Mr. Bump* and *Mr. Sullivan.*

The following opinion was filed March 6, 1928:

OWEN, J. On July 24, 1920, and within one year after the death of Patrick Cudahy, deceased, the executors of his estate paid to the treasurer of Milwaukee county the sum of $222,237.49, the estimated amount of the inheritance tax due from the estate to the state of Wisconsin and to the county of Milwaukee. This payment was accompanied by a formal protest. Thereafter, and in due course, the amount of the inheritance tax was determined by the county court of Milwaukee county. The tax as so determined included a tax upon certain gifts made by said Patrick Cudahy to his relatives within six years of his death. In determining such tax the county court gave full effect to the statute then existing (sec. 72.01 (3), Stats. 1925), which required every gift made within six years prior to the death of the donor to be construed to have been made in contemplation of death. The supreme court of the United States declared this statute unconstitutional in the case of *Schlesinger v. Wisconsin,* 270 U. S. 230, 46 Sup. Ct. 260. This action was prompted by that decision.

We find at least two insuperable obstacles to plaintiffs'

recovery: first, the payment of the tax was a voluntary payment; and second, the determination of the tax by the county court is *res adjudicata* and cannot be attacked in this action.

Under our law the inheritance tax is determined by the county court, upon which court is conferred jurisdiction to hear and determine all questions arising under the provisions of the inheritance tax laws. Sec. 72.12, Stats. All taxes imposed are due and payable at the time of the transfer, which occurs at the death of the grantor. Sec. 72.05. If the tax is paid within one year from the accruing thereof, a discount of five per centum is allowed. If such tax is not paid within eighteen months from the accruing thereof, interest is charged at the rate of ten per centum per annum from the time the tax accrued, "unless by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, such tax shall not be determined and paid as herein provided, in which case interest at the rate of six per centum per annum shall be charged upon such tax from the accrual thereof until the cause of such delay is removed, after which ten per centum shall be charged." Sec. 72.06.

The tax in this case was paid within one year after the death of the grantor by the executors of the estate. As a result thereof the estate was allowed a discount of five per centum. There was no threat made to collect the tax. There was no coercion by the state acting through any tax collector. It was evidently paid for the purpose of procuring the five per centum discount.

It is fundamental that in order to constitute an involuntary payment there must be some form of coercion. This coercion may be in the form of a threat on the part of the tax collector to levy on the goods of the taxpayer if he does not pay, or it may be in the nature of heavy penalties visited by law upon the taxpayer in case of nonpayment. In this case there was no threat on the part of any one to make

levy, or pursue any other remedy for the purpose of making collection of the tax. If we find any coercion here it must be due to the penalties resulting from a failure to pay the tax. Whatever penalties result from such failure will be found in sec. 72.06, already referred to. That provides for interest at the rate of ten per centum per annum if the tax is not paid within eighteen months from the date of the transfer. That rate of interest does not obtain, however, if, by reason of claims made upon the estate, necessary litigation, or other unavoidable cause of delay, such tax shall not be determined, but in such case interest at the rate of six per centum per annum only shall be charged.

Sec. 72.08 provides for the refunding of taxes erroneously paid, "Provided, however, that all applications for such refunding of erroneous taxes shall be made within one year from the payment thereof, or within one year after the reversal or modification of the order fixing such tax." This plainly recognizes the right of an appeal from an order of the county court fixing the amount of the inheritance tax chargeable against an estate. This right has frequently been invoked. *State v. Thompson,* 154 Wis. 320, 142 N. W. 647; *Estate of Smith,* 161 Wis. 588, 155 N. W. 109; *Estate of Week,* 169 Wis. 316, 172 N. W. 732; *Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734; *Estate of Stephenson,* 171 Wis. 452, 177 N. W. 579; *Estate of Schlesinger,* 184 Wis. 1, 199 N. W. 951. An appeal from that order, conducted in good faith, certainly constitutes necessary litigation within the meaning of the provisions of sec. 72.06. Had the plaintiffs or others interested in the determination of the tax in the Patrick Cudahy estate appealed from the order of the county court fixing the inheritance tax, there would have followed an interest charge of six per centum only. This is the only penalty that would have resulted from the nonpayment of the tax until it was finally and conclusively determined in orderly judicial proceedings. This is

but the legal rate of interest provided for the withholding of any money which should be paid. We have been cited to no authority holding that a payment made to avoid the legal rate of interest constitutes an involuntary payment. The law could not tolerate such a rule. Business settlements would have no finality. Every note or other indebtedness could be paid under protest for the purpose of preserving any possible defense which the future might reveal, keeping alive actions to recover the amount paid for a period of six years. This would subject business men to limitless, contingent liabilities, and render the solvency or financial status of business institutions unascertainable. Furthermore, although we would not hold it indispensable in all cases, a penalty imposed for nonpayment is more readily construed as coercion in cases where the taxpayer has no opportunity to establish the illegality of the tax except in an action to recover back the money paid. *Atchison, T. & S. F. R. Co. v. O'Connor,* 223 U. S. 280, 32 Sup. Ct. 216. In the instant case the estate did urge the illegality of the tax before the county court, but the contention was not pressed by an appeal from the order of that court. This remedy was open and available to all who were interested in the determination of the tax. This remedy was accompanied by no greater penalty than that which follows a contest upon a promissory note. More than this, there is much reason to believe that the payment was made at the time not for the purpose of avoiding a penalty but to secure a discount. Taxes paid for such purpose are never held to be involuntary payments. *Atchison, T. & S. F. R. Co. v. Humboldt,* 87 Kan. 1, 123 Pac. 727; *Louisville v. Becker,* 139 Ky. 17, 129 S. W. 311; *Lee v. Templeton,* 13 Gray (79 Mass.) 476. Of such a payment, under an identical statute, the New York appellate court said: "Such payment is purely voluntary; the state neither invites nor compels it." *Socolow v. Murphy,* 219 App. Div. 184, at p. 186, 219 N. Y. Supp. 78, 81. However, we do not rest our conclusion upon the premise that

the purpose of the payment was to secure the discount. We have rather rested it upon the hypothesis that it was made to avoid the most drastic penalty that can be read out of the statute. That penalty is interest at the rate of six per centum per annum. A payment to avoid such a penalty does not constitute an involuntary payment, even though accompanied by a formal protest.

That the judgment or order of the county court determining the amount of the inheritance tax due and owing from the estate to the state is *res adjudicata,* conclusive between the parties, and immune from collateral attack, is freely conceded, unless such judgment is void. The plaintiffs contend that the order or judgment of the county court determining the amount of the inheritance tax is void because the court was without jurisdiction, because there was a denial of due process of law, and because the order is based upon an unconstitutional statute.

Sec. 72.12 of the Statutes confers upon county courts jurisdiction "to hear and determine all questions arising under the provisions of the inheritance tax laws and to do any act in relation thereto authorized by law to be done by a county court in other matters or proceedings coming within its jurisdiction." The law confers jurisdiction to hear and determine all questions arising under its provisions. It is difficult to see how a broader jurisdiction could be conferred upon any court upon a given subject. It is all-inclusive. Jurisdiction has been defined as the "power to entertain the suit, consider the merits and render a binding decision thereon; and by merits we mean the various elements which enter into or qualify the plaintiff's right to the relief sought." *General Inv. Co. v. New York Cent. R. Co.* 271 U. S. 228, 46 Sup. Ct. 496.

In *Tallman v. McCarty,* 11 Wis. 401, at p. 406, it was said:

"No order which a court is empowered, under any circumstances in the course of a proceeding over which it has

jurisdiction, to make, can be treated as a nullity merely because it was made improvidently, or in a manner not warranted by law or the previous state of the case. The only question in such a case is, Had the court or tribunal the power, under *any circumstances,* to make the order or perform the act? If this be answered in the affirmative, then its decision upon *those circumstances* becomes final and conclusive until reversed by a direct proceeding for that purpose."

To like effect: 14 Corp. Jur. 723–725, 729, 730; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Comstock v. Boyle,* 134 Wis. 613, 114 N. W. 1110; *Will of Rice,* 150 Wis. 401, 438–444, 136 N. W. 956, 137 N. W. 778; *Fauntleroy v. Lum,* 210 U. S. 230, 28 Sup. Ct. 641; *Cooper v. Reynolds,* 10 Wall. (77 U. S.) 308.

The statute vested the county court with power to determine the amount of the inheritance tax due from the estate. It therefore had jurisdiction over the subject matter. It is not contended that the court lacked personal jurisdiction necessary to enable it to determine such question. Possessing jurisdiction over the person and the subject matter, it proceeded to determine the amount of the tax. The estate was represented by counsel at such hearing. A question necessary to be determined was what gifts had been made in contemplation of death. It was conceded that the deceased had made substantial gifts prior to his death. Many of such gifts had been made within six years prior to his death. The inheritance tax counsel contended that under the statute such gifts should be conclusively presumed to have been made in contemplation of death. The attorneys for the estate offered to prove that they were not made in contemplation of death. If the statute were constitutional such evidence was immaterial. The court was called upon to decide whether the statute was constitutional. It was a judicial question of the highest order. It is not claimed that the attorneys for the estate were denied an opportunity to be

heard upon this question. The court held the statute constitutional, which was equivalent to a holding that under the law of this state all gifts made within six years of the death of the grantor or donor should be included in computing the inheritance tax due from the estate. Such ruling, as it subsequently transpired, was error, but it is inconceivable that it affected the jurisdiction of the court. True, it rendered any evidence upon the question whether such gifts were made in contemplation of death immaterial and irrelevant. As we understand counsel's contention, they claim that at this point the estate was denied due process of law because it was not permitted to introduce evidence upon this question, and that because of such denial of due process of law the further proceedings of the court were void and without jurisdiction. In this connection counsel cite *Windsor v. McVeigh*, 93 U. S. 274; *Hovey v. Elliott*, 167 U. S. 409, 17 Sup. Ct. 841; *People ex rel. A. V. S. B. & I. L. Co. v. Burke*, 72 Colo. 486, 212 Pac. 837; *Wanzer v. Howland*, 10 Wis. 8; *Howe v. McGivern*, 25 Wis. 525. We have examined those cases and they fall far short of supporting such contention. In fact, we should be very much surprised to find any reputable authority holding that such a situation amounted to a denial of due process of law. Courts frequently encounter just such situations. They must decide upon the admissibility of evidence. It not infrequently happens that plaintiff's case depends entirely upon whether a certain class of evidence is admissible, a ruling upon which is practically decisive of the case. A ruling that the evidence is inadmissible does not constitute denial of due process of law where counsel is afforded an opportunity to be heard upon the question of its admissibility. The fact that in so ruling the court relies upon an unconstitutional statute cannot affect the question. The ruling may be erroneous, but if the court has jurisdiction to rule it has jurisdiction to err. The judgment following such a ruling is not a void judg-

ment which may be collaterally attacked. It is a judgment which may be reversed on appeal.

Neither are we impressed with the suggestion that evidence was necessary in order to give the court jurisdiction to impose an inheritance tax upon these gifts. The statute vested the court with jurisdiction to impose a tax upon all gifts made in contemplation of death. Having such jurisdiction, it was the judicial duty to ascertain what if any gifts had been made in contemplation of death. Evidence that there were such gifts was not necessary to jurisdiction. Rather jurisdiction was necessary to take such evidence. The court excluded such evidence because the law of the state was misconceived. Such ruling was within the jurisdiction of the court.

It is further contended that the judgment is based on an unconstitutional statute, that an unconstitutional statute is no statute and amounts to no more than if it had never been enacted, and that this renders the judgment void and subject to collateral attack. In the first place, the judgment is not based upon an unconstitutional statute. The judgment rests upon a statute which subjects gifts made in contemplation of death to an inheritance tax. This is not an unconstitutional statute. In determining what gifts were made in contemplation of death the court gave undue effect to an unconstitutional statute. This was error merely, and did not affect the jurisdiction of the court. But even though an unconstitutional statute furnished the only basis for the judgment of the court, the judgment did not constitute the subject of collateral attack. This is clearly, firmly, and definitely settled by the case of *Arnold v. Booth,* 14 Wis. 180.

If we are correct in our conclusion that the order of the county court determining the inheritance tax is a valid judgment of a court within its jurisdiction, a sanction of the present action constitutes an anomaly in our jurisprudence.

It is a most fundamental rule that a judgment pronounced under such circumstances cannot be collaterally assailed. However, this form of action finds precedent in the decisions of this court. It was expressly sanctioned in *Beals v. State,* 139 Wis. 544, 121 N. W. 347, and permitted in *Estate of Shepard,* 184 Wis. 88, 197 N. W. 344. In *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627, it was held that the determination of the inheritance tax was so far a judicial matter that the duty could properly be imposed upon a court. In *Beals v. State, supra,* it was said that the duties imposed upon the court were but steps in the enforcement of the tax law of the state rather than judgments in judicial controversies, and held that a suit would be entertained making a collateral attack upon such judgments. Since the decision of the *Beals Case* the almost uniform practice has been to secure relief from such judgments by appeal, as will appear from the citations in the earlier part of this opinion. In *Estate of Shepard, supra,* the court was urged to overrule the doctrine of the *Beals Case.* But the situation there presented induced the court to yield somewhat reluctant assent to the practice. Judgments of county courts determining inheritance taxes should be regarded as either fish or fowl. They are either judgments rendered in judicial controversies or they are not. The matter may be definitely determined here without affecting any rights, and we think it should be done not only in the interest of an orderly procedure but in fidelity to fixed principles of law. We are firmly convinced that judgments or orders of county courts determining inheritance taxes are judgments rendered in judicial proceedings and should not be the subject of collateral attack. We accordingly rule that the proper and exclusive way of reviewing such judgments is by appeal under statutes permitting appeals from judgments and orders of county courts.

From what has been said it follows that the demurrer to the answer should be overruled, and the allegations of the complaint held insufficient to state a cause of action.

*By the Court.*—Action dismissed.

The following opinion was filed April 17, 1928:

ESCHWEILER, J. (*dissenting*). While not formally dissenting in the two companion cases, I wish to herein express myself on propositions involved in all three.

I cannot agree with either of two main propositions asserted as the basis for the majority opinion, namely, that there was a voluntary payment of the amounts sought to be recovered by the individual petitioners, or that the original determination by the county court in the hearing on inheritance was so binding and conclusive that it could not thereafter be changed.

The executors of the estate, on behalf of the estate, and presumably on behalf of the heirs of Mr. Cudahy, the petitioners here, paid over to the county treasurer within the year following Mr. Cudahy's death some $222,000 as a tender of inheritance tax, accompanying such tender with the statement that the same was made under protest and not voluntarily. Quite plainly, however, whether with or without any formal protest, such a tender should be held a voluntary tender only to the extent of any *lawful* tax that might be assessed, not as a voluntary tender or payment of amounts that the court had no lawful right to thereafter declare, as was done here, should be withheld from such tender.

In May, 1919, and just prior to Mr. Cudahy's death, this court, in *Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734, held that the 1913 amendment to sec. 72.01 (3), Stats., providing that a gift made within six years of death shall be deemed to have been made in contemplation of death, established a conclusive presumption of fact and not a mere presumption of evidence, and also held (p. 437) as to such

amendment, that whether such gifts were of "a material part of the estate of the donor was a judicial question."

Upon the hearing in the matter of the inheritance tax the county court held, upon such statute, buttressed as it was by such decision, that the amounts here involved, being upon the several gifts made to the individual petitioners, were a part of the estate for the purposes of inheritance tax even though each one of the petitioners received no title to such gift by reason of the death, but had unquestioned title thereto long prior to such death.

Such advance tender being permitted, if not, strictly speaking, invited by the state, under sec. 72.08 (3), and which was not made directly by or on behalf of the petitioners as individuals but by and on behalf of the estate, creates a situation manifestly distinguishable from one where a precise and acknowledged amount is tendered as a discharge from a recognized liability, and such material distinction ought not to be overlooked. The crucial point in this situation arose, therefore, not when the tender was made, but when, pursuant to the county court's order, there was withheld from that deposit the respective sums charged for an inheritance tax as against the petitioners whose unchallenged title to this gift was not dependent upon the death. If, as a matter of ultimate fact, the gifts here in question were not lawfully subject to assessment for inheritance tax and because thereof not to be treated as a part of the estate of the deceased, then there was a *want of power* in the county court to determine and adjudge as it did. Its judgment so attempting should be held void and as a nullity. *Western P. & M. Co. v. American M. S. Co.* 175 Wis. 493, 496, 185 N. W. 535.

No claim is or was made that the several gifts were or are to be considered as part of the estate other than solely for inheritance tax purposes. The statute itself, sec. 72.05 (1), declares that such taxes shall be and remain a lien upon the property transferred until paid, and *the person to whom the*

*property is transferred,* and the administrators, executors, and trustees of every estate so transferred, shall be *personally liable* for such taxes until payment. It is thereby plainly declared that the inheritance tax is considered as a charge against the person to whom the gift is made, so that he is thereby expressly recognized as an individual debtor for such tax as well as giving the additional security against the estate itself which is then in process of probate:

Whether we consider the action of the county court in its determination as to assessments for inheritance tax an administrative or a judicial function, a question about which there is much room for debate under our decisions, in neither aspect has such county court, nor does the statute attempt to give it, jurisdiction or power to assess an inheritance tax against a donee of a valid gift *inter vivos;* it is only given such power if as a fact it is, or because of the statute it can be considered, a gift *causa mortis.* If, therefore, the fact of its being *causa mortis* is wanting, then the county court has, and can claim to have, no jurisdiction over such transfer or over the donee, any more than would its attempted jurisdiction on the presumption of a death confer jurisdiction to administer the property of one alive. *Melia v. Simmons,* 45 Wis. 334, 337; *Scott v. McNeal,* 154 U. S. 34, 43, 49, 14 Sup. Ct. 1108. Mere assumption of jurisdiction, the necessary facts being wanting, never creates a conclusive presumption of jurisdiction. The gifts here involved, made *bona fide* and absolute, so far at least as any and all questions between the estate of Mr. Cudahy and the donees are concerned, vested absolute title in the donees, and the county court can no more take such title away from them nor administer the property conveyed by such gifts as part of the estate than it could in a case where it assumed jurisdiction over either real or personal property not belonging to Mr. Cudahy, but which he might have erroneously considered his

and specifically so mentioned in his will, and which was subsequently recited in the inventory and specifically disposed of by final decree; as to such property I take it there could be no question but that the county court might thereafter, and before the bar of some statute of repose of title intervened, be required to clear, by expunging from its records, that which might otherwise seem a cloud upon the title to such real or personal property belonging, as a matter of fact, to some one else than Mr. Cudahy; there being no established method here, as in Massachusetts, for distribution of the property of persons presumed, for lapse of time, to be dead, as in *Blinn v. Nelson,* 222 U. S. 1, 32 Sup. Ct. 1.

That mere passage of time creates no barrier as against the power to exercise such expunging process upon its own records by the county court, whose power in that regard is recognized as distinct from that possessed ordinarily by other courts, is well established. *Guardianship of Reeve,* 176 Wis. 579, 590, 186 N. W. 736; *Waters v. Stickney,* 12 Allen (94 Mass.) 15; *Fidelity & Casualty Co. v. Withington,* 229 Mass. 537, 540, 118 N. E. 902; *Jones v. Jones,* 223 Mass. 540, 541, 112 N. E. 224; *Cousens v. Advent Church,* 93 Me. 292, 45 Atl. 43; *Merrill Trust Co. v. Hartford,* 104 Me. 566, 572, 72 Atl. 745.

I think the situation here is analogous with the want of power or jurisdiction to assess an inheritance tax on the transfer of stock of a nonresident decedent in a corporation organized elsewhere but doing business in this state. *Estate of Shepard,* 184 Wis. 88, 197 N. W. 344; *Rhode Island Hospital Trust Co. v. Doughton,* 270 U. S. 69, 83, 46 Sup. Ct. 256; *Colorado v. Harbeck,* 232 N. Y. 71, 82, 133 N. E. 357.

The fundamental proposition here presented is: Whether, where as here the state through its agencies has taken from the individual petitioners certain money belonging to them,

because, and solely because, of the assertion by state officials under a claimed statutory right, supported as it was by an express ruling of this court, and which, so long as the two so stood, were binding upon the state officials and the citizens, and thereafter, by a higher authority than exists in this state, and an irresistible one, it has been declared that such statute, so solely and entirely relied upon in the taking of these funds, was unlawful because unconstitutional, and therefore void under the accepted doctrine that an unconstitutional law is no law,—such ruling should not be now as fully accepted by the state and followed to its just and logical end, as was the prior ruling to the contrary by this court then accepted by the petitioners. Especially is this so when any application to change the ruling of the county court by review or appeal here would have been a vain and useless thing after the decision by this court of the *Ebeling Case, supra.* See on this point *Montana Nat. Bank v. Yellowstone County* (U. S.), 72 Lawy. Ed., Adv. Op. No. 10, p. 394, 48 Sup. Ct. 331 (decided April 9, 1928).

The state having received and benefited by the payment of such funds, the plainest dictates of justice and fair play require the return of such sums to the ones unlawfully deprived of the same, and this court, bound as we are by statute, sec. 251.09, coinciding as it does with what should be our inclination, should see to it that justice does not miscarry and should follow recognized paths for affording relief rather than give judicial sanction to attempts to retain such unjust enrichment. Under the power there is in this court as recognized in *Estate of Hoehl,* 181 Wis. 190, 193 N. W. 514, and in many other instances, I think the proceedings should be remanded to the county court with directions to expunge from its record so much thereof as attempted to withhold from the tender which was made for the payment of only proper inheritance tax, the amounts here involved, and that then such amounts should be certified as having

been erroneously paid and be refunded under sec. 72.08 (2) ; or direct relief be given in this action.

As far back as 1850 in *Woodruff v. Trapnall,* 10 How. (51 U. S.) 190, it was said (p. 207) : "We naturally look to the action of a sovereign state to be characterized by a more scrupulous regard to justice and a higher morality than belong to the ordinary transactions of individuals." Trite as such declaration may seem, I should regret to see it become obsolete.

Upon the receipt by the agents of the state of money which did not, in law or justice, rightfully belong to them, thereupon, at the time of such withholding of the money, there arose an implied contract to repay the same, and after having been presented to the legislature by way of a claim, as was done in this case, it could thereafter be the basis for a judgment for such return.

In *Sultzbach C. Co. v. U. S.* 10 Fed. (2d) 363, the plaintiff there had pleaded guilty to a violation of the Lever Act and paid $6,000 on an execution on the penalty, but before the balance was paid the act was held unconstitutional; thereupon the indictment was vacated; the sentence set aside; and in an action brought to recover the $6,000 the government's motion to dismiss was denied. This right to sue was placed squarely upon the ground that a *quasi*-contractual relationship existed by which the government obligated itself to repay such amount, and that any element of tort which might exist might be waived and the implied promise to repay be asserted, the court saying (p. 365) : "It is fair to presume that in the instant case the government, in withholding the money paid, does not, in view of the unconstitutionality of the statute under which the fine was imposed, claim to be the owner thereof." That case referred to *U. S. v. Great Falls Mfg. Co.* 112 U. S. 645, 28 Lawy. Ed. 846, 5 Sup. Ct. 306, and to *Devlin v. U. S.* 12 Ct. Cl. 266, where it was held that a fine imposed on an illegal conviction during the

Civil War is a deposit with the government and an action on implied promise to repay was proper. See, also, *U. S. v. Rothstein,* 187 Fed. 268, 109 C. C. A. 521.

It being so well established that the United States government recognizes that such an evident moral obligation is also a legal obligation and that compensation is due to one whose property is taken unlawfully by the government, and that it is bound as much, if not more so, than would be an individual, by the arising of an implied contract to pay when it improperly benefits and the owner of property is unjustly deprived thereof, and this based upon the principles of common justice as is so well stated in *Phelps v. U. S.* 274 U. S. 341, 343, 47 Sup. Ct. 611; *Campbell v. U. S.* 266 U. S. 368, 370, 45 Sup. Ct. 115; *U. S. v. Cress,* 243 U. S. 316, 329, 37 Sup. Ct. 380; *U. S. v. Lynah,* 188 U. S. 445, 465, 23 Sup. Ct. 349, just why a state should not recognize and be bound by such a plain legal as well as moral obligation, so clearly recognized by the federal government, I am at a loss to understand. I think that in such matters the state, as sovereign, should set a proper standard and exemplar to the citizens instead of asserting technical claims to hold onto property of its citizens, taken from them by agencies of the state and by reason of the exercise of a temporary controlling authority for which it had no constitutional warrant.

A motion for a rehearing was denied, with $25 costs in one case, on June 18, 1928.