WILL OF HEINEMANN: THE STATE and another, Appellants, vs. HEINEMANN, Executor, Respondent.

WILL OF DESSERT: THE STATE and another, Appellants, vs. DESSERT, Executrix, Respondent.

WILL OF McMILLAN: THE STATE and another, Appellants, vs. BEEBE and another, Executors, Respondents.

*March 31—April 29, 1930.*

For the appellants there was a brief by the *Attorney General, George D. Spohn,* inheritance tax counsel, *Gerald J. Boileau,* district attorney for Marathon county, *Brayton E. Smith,* public administrator for Marathon county, attorneys, and *O. A. Oestreich* of Janesville, special counsel, and oral argument by *Mr. Oestreich* and *Mr. Spohn.*

For the respondents there was a brief by *Brown, Pradt & Genrich* of Wausau, attorneys for B. Heinemann executors; *Stone & Park,* attorneys, and *C. B. Bird,* of counsel, all of Wausau, attorneys for Louis Dessert executors; *Bird, Smith, Okoneski & Puchner* of Wausau, attorneys for Ada McMillan executors, and *Malcolm K. Whyte* of Milwaukee, of counsel, and oral argument by *Mr. Whyte, Mr. Bird,* and *Mr. L. A. Pradt, Jr.* of Wausau.

OWEN, J.  Upon these appeals the appellants challenge the constitutionality of sec. 72.26, Stats., which provides for the refund by the State of inheritance taxes collected under the provisions of sec. 72.01, which was held unconstitutional by the supreme court of the United States in the case of *Schlesinger v. Wisconsin,* 270 U. S. 230, 46 Sup. Ct. 260. The scope and extent of the statute, so far as material, will appear as we proceed.

The statute was passed in recognition of the moral obligation of the State to return moneys collected under a void taxation law.  That the appropriation of money by the State for the purpose of discharging its moral obligations constitutes an appropriation for a public purpose, and is within legislative power, is neither challenged nor discussed in the briefs, and this very appropriately, as there is no judicial dissent from that proposition.  It is, however, suggested in the briefs for the State that in view of the remedies available to the taxpayer (*Beck v. State,* 196 Wis. 242, 219 N. W. 197) by which the validity of the law could have been ascertained, the payment of the tax was a voluntary payment from which there arose no moral obligation on the part of the State to repay the tax.

It is true that any taxpayer could have had the judgment of the supreme court of the United States upon the validity of this law, just as was accomplished in the *Schlesinger Case,*

in which event payment of the tax could have been obviated. However, we do not think it follows as a matter of law that there is no moral obligation on the part of the State to repay the tax to a taxpayer who has acquiesced in the validity of the statutes of the State and discharged his duties of citizenship by the payment of such taxes as the statutes imposed upon him. The statutes of the State constituted a legislative exaction of the tax, and the decision of this court in *Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734, declared the exaction to be constitutional. Under these circumstances it was within the province of the legislature to recognize a moral obligation on the part of the State to repay the tax. If authority for this proposition be required, it may be found in *Jackson Hill C. & C. Co. v. Board of Comm'rs,* 181 Ind. 335, 104 N. E. 497, where a State statute ordered a refund to any one who established that at any time he had paid taxes which were unlawfully assessed against him.

Certain objections are made to the law on the ground that it violates sundry constitutional provisions with reference to the assessment and collection of taxes. We dispose of these objections to the law upon the ground that this is not a law for either the assessment or collection of taxes. It simply appropriates money from the public treasury for the payment of the obligations of the State. Constitutional limitations with reference to the assessment and collection of taxes do not obtain with reference to the appropriations of money out of the State treasury. The difference between these limitations is pointed out in the independent opinion by Mr. Justice Dodge in *State ex rel. New Richmond v. Davidson,* 114 Wis. 563, 88 N. W. 596, 90 N. W. 1067. In *State ex rel. Van Dyke v. Cary,* 181 Wis. 564, 191 N. W. 546, it was said: "That there is a substantial distinction between an inequality in the assessing or collecting of a tax and inequality in the disbursing of its proceeds among those who con-

tributed, and that while the former may invalidate the tax the latter does not, is established doctrine in this state." (Citing many cases.)

The law is further challenged on the ground that it invades the judicial power of the State, in violation of sec. 2, art. VII, State Constitution, vesting in the courts the judicial power of the State. This argument proceeds upon the fact that, initially, the inheritance tax is determined by the county court, and that an appeal lies from that determination to this court.

Sec. 72.26, Stats., providing for the refund, authorizes persons entitled to a refund under the provisions thereof to file with the county court in which the tax was ascertained and adjudicated a verified petition setting forth the facts required by the law, whereupon it becomes the duty of the court, upon notice, to determine the amount of void taxes included within the determination or adjudication of the inheritance taxes originally assessed and paid, and to enter an order specifying the amount of refund to which the petitioner may be entitled. It is said that this amounts to a legislative vacation or modification of a judgment of a court, which is beyond the legislative power. This would probably be true if the judgment was one to which the State was not a party. However, the State is the beneficiary of these judgments, and when it appears that the judgment has awarded to the State more than the State is entitled to, no reason is perceived why the State may not refund the amount to which it never was entitled.

Before a refund can be made it is necessary to determine the amount of the unlawful tax collected. The duty of making this determination is imposed on the county court. The county court does not disturb the original adjudication. That stands. The State merely pays back the amount of the unlawful tax which the original determination awarded to

the State. That this is within the legislative power is expressly decided in *Calkins v. State,* 21 Wis. 501.

It is further contended that the law offends against sec. 2, art. VIII, State Constitution, which provides that "No appropriation shall be made for the payment of any claim against the State except claims of the United States and judgments, unless filed within six years after the claim accrued." It is claimed that this provision of the constitution prevents the payment of any claim of this nature unless it is filed within six years after the tax was paid. This contention depends upon the meaning of the phrase "claim against the State." It is contended on the part of the respondents that this expression has reference to a legal claim against the State, and that it does not impose any limitation on the legislature to recognize and pay obligations against the State of a moral nature resting upon considerations of equity and justice. We unhesitatingly adopt this construction of the phrase. The word "claim" always has had a well-understood meaning in the law. So far as our investigation has gone, it has uniformly been held to mean a legal claim, a demand as of right, and it has generally been held that such claims are further limited to those arising out of contract, where the relation of debtor and creditor exists. *Houston v. State,* 98 Wis. 481, 74 N. W. 111; *Stephenson v. Schelk,* 173 Wis. 251, 256, 180 N. W. 842; 11 Corp. Jur. p. 816; and see, also, many cases collated under the title "Claim" in Words and Phrases.

This provision of the constitution was no doubt intended as a limitation upon those who possessed legal claims against the State, but who permitted them to slumber without taking any action to enforce collection. It was a penalty visited upon the slothful creditor. The vigilance of one whose claim rests upon moral considerations alone can avail him nothing. He does not have an enforceable claim. He must

wait until the State voluntarily recognizes the claim before he can realize thereon. It was not the purpose of the constitutional provision to permit the State to profit by its own procrastination, or to permit preceding legislatures to tie the hands of future legislatures by failing to recognize such claims.

It is further contended that the statute denies the equal protection of the law because it limits the refund authorized thereby to taxes paid subsequent to May 27, 1919. It is said that the law discriminates against those who paid taxes prior to May 27, 1919, by denying to them the privilege which it grants to those paying taxes subsequent to that date. This is tantamount to saying that the State cannot recognize any of its obligations of the nature of those recognized by this legislation unless it recognizes all of them. A recognition of all such obligations might be so burdensome to the State as to prevent it from recognizing any. This would prevent the State from being as honest as it could afford, notwithstanding its desire to make restitution so far as possible. That such a contention should not be upheld is suggested by many considerations. The first is whether the State, through its legal department, may raise the question. It is a general proposition that no one who is not prejudicially affected can challenge the constitutionality of a law. Those whose claims are not brought within the privilege of this law are not here urging the unconstitutionality of the law so far as it grants relief to those who enjoy its privilege. The next is whether this is a law within the meaning of the constitutional provision prohibiting the State from denying to any person within its jurisdiction the equal protection of the law. But it is unnecessary for us to deal with the many considerations that press upon us in this connection. We consider the contention answered, for this court at least, by *Apfelbacher v. State,* 160 Wis. 565, 577, 152 N. W. 144, where this court held that "Waiver of immunity from suit by a state, in such

cases as the legislature may deem proper, cannot be held to be a denial of the equal protection of the laws to persons within its jurisdiction. The immunity from suit is a privilege which a sovereign may waive or refuse to waive at its pleasure. No constitutional right of its residents is violated whatever its action in that regard may be." The same reasoning leads us to the conclusion that the State may at its pleasure recognize such of its moral obligations as it feels able to discharge, and that the suggestion that it must recognize either all or none finds no support in any constitutional provision, and tends to hinder rather than promote ethical conduct on the part of the State.

The final objection to the validity of the law is based upon its provision requiring counties to return the portion of the proceeds of the invalid tax which they severally retained, amounting to seven and one-half per cent. of the total tax paid. This is accomplished by the direction to the state treasurer contained in sub. (6) of said sec. 72.26 to "charge the proper county treasurer an amount equal to that portion of said refund which said county had theretofore retained of said tax, and shall duly notify the county treasurer of such charge, which charge shall be allowed upon the next quarterly account between said treasurers provided for in section 72.19." The fact that the charge against the county is brought about by mere accounting methods between the state treasurer and the county treasurer of course is not material. In effect the provision amounts to a legislative command to the counties to repay the share of the proceeds of the void 'tax which was received and enjoyed by the respective counties. The State contends that this is beyond legislative power, that no valid obligation exists on the part of the counties to repay these taxes, and that the counties themselves should determine what their moral obligations in the premises are under such circumstances. This contention is based upon the proposition, generally recognized, that it is

possible for municipalities to acquire property in their pro-
prietary capacity which is under the protection of constitu-
tional provisions prohibiting the taking of private property
for public use without just compensation. *Worcester v.
Worcester Consolidated St. R. Co.* 196 U. S. 539, 25 Sup.
Ct. 327; *New Orleans v. New Orleans W. W. Co.* 142 U. S.
79, 12 Sup. Ct. 142; *Proprietors of Mount Hope Cemetery
v. Boston,* 158 Mass. 509, 33 N. E. 695; *State ex rel. Owen
v. Donald,* 160 Wis. 21, 151 N. W. 331. However, by
virtue of the control which the State has over its municipali-
ties, it is generally held that the legislature may compel mu-
nicipal corporations to recognize and pay debts or claims not
binding in strict law, and which for technical reasons could
not be enforced in equity, but which nevertheless are just
and equitable in their character and involve a moral obliga-
tion. 1 Dillon, Mun. Corp. (5th ed.) p. 222; 12 Corp. Jur.
p. 1005; 6 Ruling Case Law, p. 311; *Guilford v. Chenango
County,* 13 N. Y. 143; *People ex rel. Blanding v. Burr,* 13
Cal. 343; *Civic Federation of Salt Lake City v. Salt Lake
County,* 22 Utah, 6, 61 Pac. 222; *New Orleans v. Clark,* 95
U. S. 644; *Jackson Hill C. & C. Co. v. Board of Comm'rs,*
181 Ind. 335, 104 N. E. 497; *Board of Comm'rs v. Lucas,*
93 U. S. 108; *Jackson County v. La Crosse County,* 13 Wis.
*490, p. 547.

Perhaps the most authoritative statement of this principle
is to be found in *New Orleans v. Clark,* 95 U. S. 644, where
the validity of an act of the legislature compelling the city of
New Orleans to make payment of its bonds, which had not
been properly issued so as to make them legal obligations·
against the city, was under consideration. In that case the
federal supreme court, speaking through Mr. Justice FIELD,
said:

"Assuming, then, that the bonds were invalid for the
omission stated, they still represented an equitable claim
against the city. They were issued for work done in its
interest, of a nature which the city required for the con-

venience of its citizens, and which its charter authorized. It was, therefore, competent for the legislature to interfere and impose the payment of the claim upon the city. The books are full of cases where claims, just in themselves, but which, from some irregularity or omission in the proceedings by which they were created, could not be enforced in the courts of law, have been thus recognized and their payment secured. The power of the legislature to require the payment of a claim for which an equivalent has been received, and from the payment of which the city can only escape on technical grounds, would seem to be clear. . . . A very different question would be presented if the attempt were made to apply the means raised to the payment of claims for which no consideration had been received by the city."

It is urged that the case of *Hasbrouck v. Milwaukee,* 13 Wis. 37, is a repudiation of, or at least opposed to, this doctrine. It may so appear upon a casual consideration of that case. However, the legislation there under consideration was not in the nature of a legislative command to the municipality to make payment of the amount which was equitably owing on the invalid contract. In that case the legislation was nothing more than authority to the city by which its void contract might have been validated. The city refused to act under such authority, either expressly or impliedly, and the court simply held that under the legislative act it was necessary for the city to take affirmative action in order to validate the void contract. It may be noted, also, that that case was decided only five years after the decision in *Guilford v. Chenango County,* 13 N. Y. 143, which appears to have been the first decision asserting the power of the legislature to compel its municipalities to recognize their moral obligations. This principle was not discussed by the court in the *Hasbrouck Case* and, probably, for the very good reason that it was not involved.

Here the various counties have had the benefit of moneys coming into their hands by virtue of a void system of taxation. The tax was levied by the State, and their portion

thereof is in a sense the gratuity of the State. Certain it is that this fund does not constitute property held by the counties in their local or proprietary capacities which is subject to constitutional protection. These funds came into their hands as the result of the exertion of governmental power belonging to the legislature, and it seems quite plain that by virtue of the State's control and supervision over its municipalities it may compel such municipalities to refund these moneys to which they are not entitled. We discover no respect in which this act offends against constitutional provisions, and the judgments appealed from must be affirmed.

*By the Court.*—Judgments affirmed.