## SCHLESINGER v. MILWAUKEE COUNTY, WIS.

### No. 4293.

Circuit Court of Appeals, Seventh Circuit.
July 3, 1930.

Charles F. Fawsett, of Milwaukee, Wis., for appellant.

C. Stanley Perry, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge.

Plaintiff (appellant), an heir and devisee and the assignee of the other heirs and devisees of Ferdinand Schlesinger, who died, while a resident of Milwaukee county, Wis., January 2, 1921, sued the defendant (appellee) to recover for money alleged to have been wrongfully converted. The question is whether, if there was a conversion, defendant is liable to repay not only the money converted, but also a further sum as compensation. Each party, after answer, moved for a judgment on the pleadings. Defendant's motion was allowed.

Section 72.01(3) of the Wisconsin Statutes (1921) provided that transfers, without an adequate valuable consideration, made within six years prior to death of the donor, should be construed to have been made in contemplation of death.

Schlesinger had, within six years of his death, made large transfers to his wife and children, without an adequate valuable consideration.

In advance of the determination of the estate inheritance tax by the county court, as provided by sections 72.12 and 72.15(10), estimate was made pursuant to section 72.08(3), and the following letter of tender, with the checks therein mentioned, was delivered to the county treasurer of Milwaukee county:

"Enclosed we hand you the following checks in tender of the inheritance tax upon the estate of Ferdinand Schlesinger, deceased, as computed by the executors:

Check of the Executors for...... 1,295.00
Mathilda Schlesinger's check for.. 51,462.67
A. A. Schlesinger's check for.... 79,042.00
H. J. Schlesinger's check for.... 81,126.16
Gertrude MacLaren's check for.. 82,812.85
_____
The total of these checks is...... 295,739.58

"These checks cover not only the tax upon the estate which was left by Ferdinand Schlesinger at his death but also the taxes upon the life insurance collected by the widow and upon certain transfers of property made by the deceased during the period of six years before his death.

"The executors and the transferees contend that none of these transfers was made in contemplation of death and that the imposition of a tax upon them by the Wisconsin statutes is unlawful, null and void.

"The amount of the tax so far as it is a tax upon such transfers is herewith paid under compulsion and under protest and the executors and transferees above named reserve and assert the right to demand and recover back the amount of the tax so paid upon such transfers.

"They also reserve the right to recover back any excess which may have been paid over and above the lawful taxes in said estate as they may hereafter be determined and fixed by the court."

The proceeds of the checks were carried by the county treasurer in his account as county treasurer until October 3, 1922, when he, pursuant to sections 72.19 and 72.20, reported and paid to the state treasurer 92½ per cent. of the money and retained 7½ per cent. for the use of the county of Milwaukee.

The determination of the tax by the county court was sustained by the Supreme Court of Wisconsin. Estate of Schlesinger, 184 Wis. 1, 199 N. W. 951. The Supreme Court of the United States reversed that judgment, holding clause 3 (section 72.01(3), unconstitutional because in conflict with the Fourteenth Amendment to the Federal Constitution. Schlesinger et al. v. Wisconsin et al., 270 U. S. 230, 46 S. Ct. 260, 70 L. Ed. 557, 43 A. L. R. 1224, decided March 1, 1926.

Under stipulation, to which defendant was not a party, the judgment in the county court was, on June 2, 1926, reduced to $1,865.48, the amount due solely on property not transferred.

Within one year thereafter, in August, 1926, pursuant to the provisions of section 72.08, plaintiff and his assignors filed with the state treasurer, and also with the county treasurer, demand for a refund of $293,-767.24, and at the same time demanded payment of 6 per cent. interest thereon from July 1, 1922. Pursuant to the provisions of section 72.08(2), the state treasurer immediately refunded the full amount of the illegal tax received by him, and directed the county treasurer to refund the 7½ per cent., retained by him. Payment of interest was refused by both treasurers. Payment was accepted from the state treasurer, without prejudice to the claim for interest. The tender by the county treasurer of the 7½ per cent. was refused.

In December, 1926, separate suits were begun by the widow and children in the state courts of Wisconsin against defendant to recover the 7½ per cent., tendered by the county treasurer, and also the interest on the whole sum paid to the county treasurer. It was stipulated that $20,000 of the 7½ per cent. should be, and it was, paid by the county treasurer, without prejudice. Those suits were immediately dismissed.

In February, 1927, plaintiff and his assignors, to meet the requirements of sections 14.31 and 14.38, being sections of chapter 14 of the Wisconsin Statutes, entitled "Constitutional State Officers," filed claims with the secretary of state to recover the 7½ per cent. and the interest demanded in the application for the refund. The Legislature, in June, 1927, rejected those claims, and plaintiff and his assignors, under the provisions of chapter 285 of the Statutes of Wisconsin (section 285.01 et seq., St. 1929), entitled "Actions against State," commenced their separate suits in the Supreme Court of Wisconsin against the state, to recover the amounts of those rejected claims, on the theory of wrongful conversion by the state. After demurrers sustained, leave was given to amend. Schlesinger v. State, 195 Wis. 366, 218 N. W. 440, 57 A. L. R. 352. Amended complaints were filed, that called the demand "just compensation." Demurrers were again interposed and sustained. Schlesinger v. State, 198 Wis. 381, 223 N. W. 856.

While those cases were pending, plaintiff, having become a nonresident and assignee of all interests, brought this suit, claiming conversion by this defendant of the whole sum paid the county treasurer.

The first question confronting us is, Was the payment to the county treasurer involuntary?

In Schlesinger v. State, 198 Wis. 381, 223 N. W. 856, 857, supra, the demand was for the claims rejected by the state. The demand here is for the same money and damages, namely, the part of the 7½ per cent. retained by the county treasurer, and so-called just compensation for the whole sum alleged to have been converted. Although this defendant was not technically, a party to those suits,

yet, in considering and determining the question as to whether the payment was voluntary or involuntary, the court necessarily had to consider how and the reasons why the money was tendered to and taken by the county treasurer, and the court also had, in determining those questions, to interpret section 72.06 of the Statute (St. 1921).

In the second case, the court said: "The foundation of plaintiffs' claims must rest on the proposition that these taxes were involuntarily paid." That necessarily related to the payment of July 1, 1922, to the county treasurer. Then followed an extended discussion of section 72.06, which provides for a discount for prepayment of an inheritance tax and for penalties under certain conditions for failure to pay. The court said: "The only penalty resulting from a failure to pay the taxes at the time they were paid would have been the imposition of interest at the rate of 6 per centum from the time of the accruing of such taxes until they were paid. Beck v. State, 196 Wis. 242, 219 N. W. 197"—and held that the payment to the county treasurer was voluntary, and that the remedy provided by the act for the recovery of such illegal taxes is exclusive. The court further said: "Plaintiffs have had the benefit of that remedy, and by the enjoyment thereof their remedy is entirely exhausted. * * * This is not only a complete, adequate, and efficient remedy, but leaves no room for further judicial action, unless it be to compel the treasurers to perform their respective duties. Plainly the Legislature intended these provisions to exclude every other remedy against either the state or the county."

In so holding, the Wisconsin court was construing the statutes of that state with reference to penalties under section 72.06 and remedies under section 72.08(2). We are bound by the state's construction of its statutes.

The penalties under section 72.06 were the basis of the coercion there complained of. Plaintiff is here also urging that the lien provided for in section 72.05 was an element. It reads: "Every such tax shall be and remain a lien upon the property transferred until paid." The property transferred by Schlesinger consisted of corporation stocks, and the transfers were made nearly six years before the tax was paid. It does not appear that plaintiff had any interest in them at the time of the payment of the tax, or that they were at that time in any way subject to the lien.

We are of opinion that the plaintiff should be here bound by the holding of the state court that the payment was voluntary.

It is urged that the federal Supreme Court necessarily held that the payment to the county treasurer was involuntary. The only question involved in the appeal from the county court to the state Supreme Court was whether the statute was void because obnoxious to the Fourteenth Amendment to the Federal Constitution. That question was the only one that was or could have been considered and determined by the state Supreme Court. The jurisdiction of the state Supreme Court was in no way dependent upon the question as to whether there had been a voluntary or an involuntary payment, or any payment. Plaintiff will certainly not contend that payment of the tax was a necessary prerequisite to the right of appeal.

That a county, that by statute may sue and be sued, may be so sued not only on contract obligations, but also in many cases for torts committed, is not open to question. Of the many authorities cited by plaintiff to sustain his contention that defendant is liable in this case, some were decided upon demurrers to the complaint, and some on various other grounds. However, in every instance, as we read those cases, the county was only held liable where it had acted affirmatively or had knowingly ratified the wrongful act.

Provisions here pertinent are found under the title "Functions and Government of Municipalities," chapter 59 of the Statutes of Wisconsin. By section 59.01, each county is declared to be a body corporate, with power to sue and be sued. Section 59.02(1) provides: "Except as provided in subsection (2) of this section, the powers of a county as a body corporate can only be exercised by the county board thereof, or in pursuance of a resolution or ordinance adopted by such board."

Subsection 2 is not here material. It is no where contended that the county board took any action whatever affecting the collection or disposition of the tax. Although the county board is authorized, in certain cases, to levy taxes, the tax here in question is not one of them. Section 59.76 provides:

"(1) No action shall be brought or maintained against a county upon any account, demand or cause of action when the only relief demandable is a judgment for money, except upon a county order, unless the county board shall consent and agree to the institution of such action, or unless such claim shall

have been duly presented to such board and they shall have failed to act upon the same within the time fixed by law. * * *

"(2) The decision of the county board disallowing in whole or in part any claim of any person shall be final and a bar to any action founded thereon, except as provided in subsection (1), unless an action be brought to recover against the county within six months after such disallowance. * * * "

Section 59.77 describes the method by which claims shall be made and presented against the county. Section 74.64 of chapter 74 entitled "Collection of Taxes" provides: "If any person, within two years after the payment of any state or county tax by him, can satisfactorily show to the county board that the same was improperly assessed or was paid by mistake when it was not justly chargeable, the said board shall order the same to be repaid by the county treasurer; and if the taxes so refunded or any portion thereof be properly chargeable to any town, city or village it shall be so charged."

In Schlesinger v. State, 198 Wis. 381, 223 N. W. 856, 857, the court held that the remedy provided by the inheritance tax law "is exclusive, because * * * it is plain that the Legislature intended to provide a speedy, efficient, and complete remedy, which should be exclusive of all other remedies." In view of that holding, it is doubtful whether the foregoing sections 59.76, 59.74, and 74.64 apply here because the tax here was collected as a state inheritance tax. However, in the complaint it is averred: "Before the commencement of this action, to-wit, on the 19th of March, 1928, the plaintiff and said other donees respectively duly made and filed their claims with the county board of Milwaukee County for the amounts remaining unpaid and due to them respectively after crediting said payments on account, such amounts being as follows, to-wit." (The items stated amount to $78,544.21).

There then follows: "Said County Board and the County of Milwaukee have refused to allow or pay said claims filed as aforesaid, and no part thereof has been paid."

That demand was the first notice to defendant that plaintiff intended to make any claim upon it for the money, except the suits in the state courts against the county in December, 1926, that appear to have been commenced without presentation of any claim or demand against the county, as required by the above statutes.

The letter of tender gave to the county treasurer the only information which he had concerning the intent and purpose of the executors in paying the tax, and the letter must be construed in connection with the state statutes, of which the executors were chargeable with notice. In paying the estimated amount of the tax in advance, the executors were availing themselves of the provisions of section 72.08(3), that provided therefor. In selecting the treasurer, to whom the letter was addressed, they were availing themselves of the provisions of section 72.05(2), which names the county treasurer as the officer to whom the tax shall be paid. They were chargeable with notice that under those sections the county treasurer was without discretion as to the disposition of the money tendered him. The letter states that the tender is to cover inheritance tax for the whole estate, and divides the property for which the tax was tendered into three parts, viz.: (1) The estate left at death; (2) insurance collected by the widow; (3) the property transferred by death. The letter states that the tax, so far as it was a tax upon the transfers, was paid under compulsion and protest. Although, admittedly, the tax upon the first two items was a valid tax, the letter gave no information as to how much was tendered upon the items that were legal and how much was tendered upon the items claimed not to be legal. As the tax was ultimately determined, the executors' check of $1,295 was some $600 less than the actual tax due. It is possible that the record now shows that the checks of the individuals were made to cover the estimated tax upon the stocks severally received by them, but there is nothing to show that the county treasurer at the time of the tender had any such information. Two rights were reserved: (a) To demand and recover back the amount of taxes paid upon the transfer; (b) to recover back any excess over the lawful taxes as they were thereafter determined and fixed by the court. The first reservation covered rights given by section 72.08(2), above herein discussed. The remedy provided by that section was pursued by plaintiff and his assignors, and it was under the provisions of that section that the refund was made by the state treasurer and the tender was made by the county treasurer but was refused. The second reservation covered rights given by section 72.08(3). Quite evidently we think the reservations were shaped with no other end in view than to enable plaintiff and his assignors to avail themselves, if they were successful in their contentions,

of the rights given by these statutes. There was no requirement in the letter that the county treasurer should not turn 92½ per cent. of the money over to the state treasurer, as the law required him to do, nor was there anything that required him to handle any part of the money differently from the way in which he was required to handle the whole by the statutes.

After the statute was declared unconstitutional and the order for the correct amount of the tax was entered in the county court, plaintiff and his assignors pursued the remedies provided by the inheritance tax statute, and above herein referred to. No suggestion of any liability on the part of the defendant was made until the latter part of 1926, when the suits were started in the state court, nearly five years after the payment of the money and several months after the 7½ per cent., retained by the county treasurer, had been tendered and refused. The claim, above shown, filed with the county board in March, 1928, was nearly six years after the money was paid to the county treasurer. When the payment was made to the county treasurer, the executors knew of the remedy provided by the inheritance tax statutes and that that was the exclusive remedy provided for them by the state, if they succeeded in their attempt to have the tax declared illegal. With the exception of the section held to be unconstitutional, all of the sections of the inheritance tax statute, including the penalty section and the remedy provisions, were legal and binding.

We are of opinion that, in shaping the letter of tender, the executors intended that the county treasurer should accept the money and dispose of it in the same manner as he was required to do under the law had there been no question of the illegality of any part of the tax. From the fact that the letter of tender did not advise him as to what part of the money was to pay legal taxes and what part of it was to pay the illegal taxes, and the further fact that the letter was evidently drafted for the purpose of reserving to the executors the right of refund provided by the statute, we are of opinion that the county treasurer was justified in receiving and disposing of the money as he did, and that he had the right to assume that the executors intended that before they would have any right to reclaim the money a demand would be made therefor, as indicated by the letter.

In the complaint, are the following averments: "Said County Treasurer then and there with notice of said protest, claims and reservations of said donees took, received and collected from them said sums so tendered and acting as such treasurer paid the same into the treasury of the county of Milwaukee, which then and there on said 1st day of July, 1922, received said sums, etc."

And, again: "Plaintiff further alleges that in receiving said sums of money on the said first day of July, 1922, said county took the same under and subject to the conditions, claims and reservations which accompanied the tender thereof as aforesaid."

The averment does not say that defendant had any notice of the protest. The facts show that it did not have.

The averment that the money was paid into the treasury of Milwaukee county, does not necessarily mean that any one having authority to bind the county in that respect knew anything about the payment, or that the money was thereby brought under the county's control. The averment that the treasurer of Milwaukee county then and there received the money states a mere conclusion. That averment and the averment that the county took the money "under and subject to the conditions, claims and reservations which accompanied the tender," are mere conclusions, not supported by the facts. The arguments and the answer, setting out the facts, show that plaintiff's sole contention against defendant is based upon the fact that all the money was retained by the county treasurer in the county treasury until the 92½ per cent. was paid to the state treasurer and the 7½ per cent. was retained by the county treasurer for the use of defendant, and that thereafter the 7½ per cent. was appropriated by defendant to its governmental use. On principle, and, we think, in fact, the question here is the same question decided adversely to plaintiffs in Schlesinger v. State, 198 Wis. 381, 223 N. W. 856. When plaintiff and his assignors availed themselves of valid provisions of the inheritance tax statute, in making their tenders with reservations, so that they might avail themselves of other valid provisions of that statute relating to refund of such payments, they knew exactly the amount that would be refunded. It seems to have been understood by them, and must have been understood by the county treasurer, that they parted with their money, relying not upon the theory of just compensation for wrongful conversion, now advanced, but relying solely upon the statutory refund. They pursued the remedy provided by the statute for several years, and claimed from the state not only what the

26

state actually received into its treasury, but also the 7½ per cent. retained by the county treasurer. The state acknowledged liability to make a refund of the whole sum paid and met that liability by its check for all but 7½ per cent., and for that gave an order upon the county treasurer. A tender made thereunder was refused. There is no contention that the 7½ per cent. has not at all times since been available under that order. The order upon the county treasurer was a lawful order, and its legal effect was to withdraw from the county all right, possession, or control it may have had over the 7½ per cent. The county treasurer was never the agent of the county in collecting and distributing inheritance tax money, and in that connection it had no authority or control over him. In the matter of refunding taxes illegally collected, the county had no control over the county treasurer as against the order of the state treasurer, even though the order directed him to refund the money retained for the county's use. The county could not have prevented the county treasurer from obeying the order of the state treasurer. Although the county, under some circumstances, would have been liable in an action for money had and received, yet that remedy does not exist now.

We agree with the District Court that the plaintiff was not deprived of any constitutional right, but, believing as we do that the county is, under the circumstances shown, not liable in any event or in any manner to plaintiff, it is not necessary for us to consider the constitutional question.

The judgment is affirmed.